145 So.2d 83 (1962)
EMMCO INSURANCE COMPANY et al., Plaintiffs and Appellees,
v.
Arthur P. CARAMBAT, Defendant and Appellant.
No. 575.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1962.
Vincent C. Rodriguez, New Orleans, for defendant-appellant.
Morphy & Freeman and A. D. Freeman, Jr., New Orleans, for plaintiffs-appellees.
Before CULPEPPER, PONDER and McGEE, JJ.
*84 JESSE C. McGEE, Judge ad hoc.
This appeal is from a judgment of the First City Court of New Orleans, awarding plaintiff Bello and his insurer, as partial subrogee, a money judgment for damages to plaintiff Bello's automobile, resulting from an intersectional automobile collision on the afternoon of October 2, 1960. Trial was had September 13, 1961, and judgment was signed on September 19, 1961.
The facts appear to be that plaintiff Aldolfo Bello, Jr., was driving down North Claiborne Avenue, about 3:30 in the afternoon on October 2, 1960, at a rate of speed of 25 or 30 miles per hour. The plaintiff Bello observed the defendant stopped at a stop sign on plaintiff's left on Music Street; that as plaintiff was entering the intersection, the defendant moved into the intersection from the stop sign and plaintiff swerved to the right to avoid striking the defendant's automobile and struck a parked car.
The only evidence in this record is the testimony of the plaintiff Bello, and that of defendant.
Defendant Carambat's testimony was to the effect that he had started to go across North Claiborne, from his stopped position, having looked in both directions, downtown and uptown, and moved to cross when he saw a vehicle coming from uptown; he stopped and the vehicle swerved over and hit three cars parked half on the sidewalk and half on the street. In answer to a question of what did he see when he looked uptown and his reply was. "At the first time I never seen nothing and then I looked down the other way and I went to go across and I seen the other vehicle coming, then I stopped. I had my car under control at all times." (Tr. 3-4) The witness further testified in response to a question. "Q. How far were you from your first stop when you stopped the second time? A. I'd say the street averages around 30 some odd feet wide, Claiborne. I stopped almost about three foot from the other stop to the center line, my bumper almost in the center." (Tr. 4)
Mr. Bello testified that he was traveling from uptown in a downtown direction; that North Claiborne in the vicinity of Music Street has a 30 mile speed zone; it is a two lane street, one traveling downtown and the other one uptown; that on approaching the intersection with Music Street, he noticed a '49 or '50 Oldsmobile color blue, at the stop sign on Music, on the witness's left, and just as he entered the intersection the Oldsmobile pulled out on to Claiborne the width of the lane of the traffic going uptown; that the defendant then saw the plaintiff, and tried to apply his brake. The witness further stated that he saw there would be a collision so he swerved to the right to get away from him (defendant.) (Tr. 5-6)
The witness Bello is a police officer employed by the City of New Orleans, age 23 years, stated that he was about 25 feet from the intersection with Music Street when he first saw the defendant's automobile; that there were skid marks on the roadway where defendant's automobile had skidded and the skid marks began about the middle of the uptown lane on Claiborne and extended about 5 feet beyond the center line into plaintiff's lane. (Tr. 7-10)
Now Mr. Carambat was sure, according to his statement, that after moving from his stopped position on Music Street, he stopped his automobile with his bumper directly in the center line of Claiborne and that at no time did his car skid and go beyond the center line of Claiborne Avenue. (Tr. 13)
The defendant denied that his car skidded after entering Claiborne and before reaching the center line of Claiborne, while the testimony of Mr. Bello seems somewhat in conflict with the testimony of Mr. Carambat as to the skid marks and skidding. Mr. Bello stated that he had pointed out the skid marks to a photographer, (who was at a wedding reception, on the corner of Music and Claiborne) and that these skid marks *85 began about the middle of the driving lane on Claiborne going uptown and that these skid marks extended about 5 feet beyond the center line of Claiborne Avenue into Bello's lane, and further testified that he pointed out these skid marks to the photographer as well as to the police officers who investigated the accident. (Tr. 8-9-11)
The defendant argues that the plaintiff, in failing to produce the photographer with his pictures and the police officers, who investigated the accident, with their reports, for the purpose of corroborating his testimony, certainly raises a presumption that this testimony would have been unfavorable to plaintiffs. Coker v. Nola Cabs, Inc., La. App., 81 So.2d 65.
The trial court in its written reasons for judgment, stated,
"Meanwhile, plaintiff coming down Claiborne, evidently assumed that once the party started across, he did not see him, and was not going to stop; then in order to avoid the accident tried to swerve to get out of the way of defendant's automobile." (Tr. 16)
We have concluded that the defendant was negligent, even under his own version of the facts. The duty of care imposed on a motorist, faced with a stop sign, is set forth in the recent opinion of this court in the case of Wise v. Prescott, La.App., 142 So.2d 613 as follows:
"The rule in regard to a stop sign is that when a motorist stops in obedience thereto, he performs but one half the duty imposed upon him, and he is further required, before starting forward, to make careful appraisal of traffic conditions in the intersection and to refrain from proceeding in the face of obvious or possible danger; otherwise he is deemed guilty of gross negligence. Anderson v. Morgan City Canning Co., La.App., 73 So.2d 196, and the many cases cited therein."
In the present case, the defendant stopped in obedience to the sign and, according to his testimony, he looked in both directions on Claiborne Street but saw no approaching vehicles. He then started across Claiborne and, on looking again in the uptown direction, saw plaintiff's vehicle for the first time only fifteen feet away. Obviously defendant was guilty of negligence in failing to see the plaintiff's approaching vehicle when he made his first observation from the stop sign and in entering the intersection at a time when plaintiff's vehicle was so close that it was unsafe to proceed.
By an alternative plea, defendant alleges plaintiff was guilty of contributory negligence in driving at an excessive speed, failing to have his vehicle under proper control and failing to keep a proper lookout. As to speed, there is no evidence whatever that plaintiff was exceeding the limit of 30 MPH or traveling at an excessive speed under the circumstances. As to proper control and lookout, the jurisprudence of this state is now well established that a motorist, driving at a reasonable speed on a right of way street, has a right to assume that a driver approachng the intersection from a less favored street will stop at a stop sign and, if already stopped, will yield the right of way. The motorist on the right of way street can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe the law. Steele v. State Farm Mutual Ins. Co., 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Ins. Co., 238 La. 250, 115 So.2d 339; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849.
Thus, in the present case, when plaintiff, at a distance of only 25 feet from the intersection, saw the defendant stopped at the stop sign, he had a right to assume that defendant would stay there and yield the right of way. Plaintiff had a right to indulge in this assumption until defendant proceeded into the intersection, but by that time plaintiff was less than 25 feet away *86 and could not stop in time to avoid a collision. In this emergency, created by the negligence of defendant, the plaintiff acted reasonably in swerving to the right to try to get out of the way of defendant's automobile, not knowing whether defendant would stop. Had plaintiff not swerved, and defendant not stopped, it is obvious that a very serious collision might have occurred. Fortunately, defendant saw plaintiff at the last moment and stopped, but plaintiff was unable to avoid striking a parked automobile. The fact that defendant's car did not strike plaintiff's vehicle does not alter the conclusion that defendant's negligence was the sole proximate cause of the accident. See Gay v. United States Fidelity & Guaranty Co., La.App., 76 So.2d 60 and the authorities cited therein.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.