REID, Judge.
This suit was brought by Junies Lee Jackson, individually and for and on behalf of’and for the use and benefit of the minor children, Marion Antoinette, Bertha and Richelle Jackson, and Alonzo and Terry Taylor. Plaintiff alleged that he was the father of the minors Marion Antoinette, Bertha and Richelle Jackson, issue of his marriage to Leola Sholes Taylor Jackson, and the step-father of the minors Alonzo and Terry Taylor, issue of his wife’s first marriage to Alonzo Taylor, Sr., now deceased. The suit is for medical expenses incurred and to be incurred by Junies Lee Jackson and for physical injuries, pain and suffering allegedly sustained by the named minors. The suit was brought against American Insurance Company, the public liability insurer of Leola T. Jackson, wife of plaintiff and mother of the five minor children.
By agreement of counsel it was stipulated that the undisputed facts were that the accident sued upon occurred on Sunday, September 29, 1963, at approximately 12:25 P.M., at the intersection of Louisiana Highways 19 and 10, approximately seven miles West of Clinton, Louisiana. The accident involved a 1962 GMC pickup truck being driven by Jones T. Young of Jayess, Mississippi, and a 1958 Chevrolet sedan being driven by the said Leola T. Jackson of Baton Rouge. The occupants of the car were Rachal Jackson, Marion Jackson and Terry Taylor, who were on the front seat with the driver, Leola T. Jackson, and Alonzo Taylor, Louella McCall, James McCall, and Bertha Jackson, who were on the back seat of the car. The highway at the point of intersection of the two highways is straight and level. Both highways are blacktopped two-lane highways. The accident happened in daylight, the weather was dry, and the roads were in good condition. The east-west highway is controlled at the intersection by a stop sign and a flashing caution light. To the north-south traffic there is an amber flashing light. The Young vehicle was going east on Pligh-way 10 and the Jackson vehicle was going north on Highway 19.
Arising out of the same accident is another suit brought by James McCall and his wife Louella McCall who were guest passengers in the car driven by Leola T. Jackson, said second suit having been No. 101,645 on the docket of the 19th Judicial District Court for the Parish of East Baton Rouge, and being No. 6525 on the docket of this Court. The two cases were consolidated for the purpose of trial, were tried on the merits on December 30, 1964, and for written reasons assigned on January 13, 1965, judgments in both cases were rendered on January 27, 1965 dismissing plaintiffs’ demands at their costs. The judgment in the matter here considered, Junies Lee Jackson, Ind., etc, vs. American Insurance Company, fixed the expert witness fee of Dr. Clifton T. Morris, Sr. at $50.00, that of Dr. Cecil O. Lorio at $100.00, that of Dr. R. M. Pullig at $50.00, and taxed those fees as costs. It is from that judgment plaintiff has appealed to this Court.
In his excellent reasons for judgment the trial Judge held as follows;
‘T find the relevant facts in this case to be as follows:
“The defendant driver approached this intersection at a speed of approxi *554 mately 55 miles per hour. She testi-íied when she saw the 50 mile speed sign she commenced decreasing her speed and that when she was near this sign, which was 183 feet from the intersection, she saw the truck approaching the intersection, whereupon she continued the deceleration of her car and applied her brakes lightly. Upon observing that the truck stopped at the intersection she accelerated her car and was approaching the intersection at about 45 miles per hour. She then saw the truck start across the intersection and she applied her brakes with full force, leaving approximately 30 feet of skid marks up to the point of collision. Considering her speed and the reaction time, she must have been some 80 to 100 feet from the intersection when the truck began proceeding across it. The question then is whether or not these facts show negligence on the part of the defendant driver.
“Plaintiffs have cited Martin v. Adams [La.App.], 88 So.2d 476, in support of their contention that the driver was negligent. In that case there were no signal lights, traffic controls, or stop signs at the intersection and directional right of way was the only control involved. The evidence showed that neither driver saw the other vehicle until momentarily before the impact. Both drivers were held guilty of negligence. To the same effect is the case of Cappo v. Baker [La.App.], 91 So.2d 611, cited by plaintiffs. Savoy v. Cooley [La.App.], 144 So.2d 223, cited by plaintiffs involved an intersection similar to the one involved in the instant suits. That case is authority for the proposition that an amber light serves as a warning to proceed with care and a motorist is guilty of negligence if he fails to take measures to avoid obvious danger. The-same holding is found in Bourgeois v. Francois [La.App.], 152 So.2d 383. This is likewise the requirement of LSA-R.S. 32:234 (A-2).
“Defendant has cited the decisions in Martin v. New Amsterdam Casualty Company [La.App.], 97 So.2d 509, and Emmco Insurance Company v. Carambat [La.App.], 145 So.2d 83. The Martin case holds that a motorist approaching an intersection on a blinking amber light has the right to assume that a driver approaching on a less favored street will observe the law by bringing his automobile to a full stop before entering the intersection but that he cannot indulge in such an assumption if he sees or should see that the driver on the intersecting street has not observed or cannot observe the law with respect to stopping at that intersection. The second case cited by defendant holds that a motorist driving at a reasonable speed on a right of way street has the right to assume that a driver approaching the intersection from a less favored street will stop at a stop sign and, if already stopped, will yield the right of way. The motorist on the right of way street can indulge in this assumption until he sees or should see that the other car has not observed or is not going to observe the law.
“In the light of the above authorities, it is my opinion that the evidence here does not show negligence on the part of the defendant driver. She was proceeding with caution when she observed the approach of the truck and when the truck stopped at the intersection it was not, in my opinion, negligence on her part to proceed toward the intersection. When she saw the truck entering the intersection she made every possible effort to avoid the collision.
“There is testimony in the record from the two adult guest passengers that the driver’s attention to the traffic situation was diverted when she looked down to attend to one of the little *555 children sitting next to her. -The testimony indicates to me that if this happened it was after the driver had applied her brakes with full force when she saw the truck entering the intersection. In that event, such action on her part had nothing to do with the collision.”
It has been repeatedly said by this Court that the determination of a case largely depends upon the correctness of the factual findings made by the Judge and his application to the jurisprudence.
After a careful examination of the record, it cannot be said that the finding of the Trial Judge is manifestly erroneous. It also appears that the facts of this case fit those cases cited by the Trial Judge as authority for his holding.
In regard to the question of whether or not the driver’s attention was diverted at the time of the accident, it should be pointed out that the testimony of the State Trooper that there were skid marks of approximately 20 feet in length would indicate that the driver was attempting to brake her car prior to entering the intersection, and the fact that the Jackson vehicle came to rest in practically the same spot where the impact occurred would indicate that the driver had almost completely brought her car to a stop. It was brought out at the time of the trial that neither James McCall nor Louella McCall, the plaintiffs in the companion suit, had previously mentioned the fact that the driver’s attention was diverted, despite Louella McCall’s emphatic testimony that this was negligence on the part of the driver of the car. Also lending weight to the Trial Judge’s finding is the testimony of Leola T. Jackson, mother of the five injured children. At no time did she testify in a manner which could be construed as permitting recovery on behalf of her minor children. Her testimony on both direct and cross examination was consistent, concise and logical. She testified as follows:
“Q. Now you were traveling north on Highway 19 to Wilson, is that correct:
A. That is correct.
Q. Now were you then involved in an accident at the intersection of Louisiana Highway 10 and Louisiana Highway 19?
A. That is correct.
Q. About how' fast were you driving just immediately before you got to that intersection?
A. Before I got to the speed sign?
Q. Yes.
A. About SO or SS miles an hour.
Q. Well, how, as you approached the intersection what, if anything, did you do ?
A. Well, when I approached this speed sign I took my foot off the accelerator and applied my brakes slowly because I had seen this truck coming from Highway 10 west going east.
Q. Now you then applied your brakes slightly, I believe you said ?
A. That’s right, slightly.
Q. Was that when you saw this truck ?
A. That’s right.
Q. Had you lifted your foot off the accelerator prior to that?
A. That’s right.
Q. Is that correct?
A. Uh-huh.
Q. Now what happened then after you applied your brakes slightly?
A. Well, .the. truck pulled up to the stop sign and stopped.
*556 Q. Now what did you do then?
A. Well, after I seen he had stopped I put my foot hack on the accelerator and to proceed across the intersection, and—
Q. I see. And what happened then?
A. —when I put my foot back on the accelerator to proceed across the intersection the trade came out.
Q. And what did you then do?
A. I applied my brakes real hard and started swerving to my right.
Q. And then what happened?
A. The car skidded on into the intersection where the truck was going east and we hit on the left front fender.
•I* 'I* ¥ ^
A. Well, as I was proceeding across the intersection the truck was going east which had stopped at the stop sign, and when I seen that he had stopped I put my foot on the accelerator to go ahead across and he came out, and I applied my brakes real hard and the car skidded on into the intersection.
Q. What parts of the automobiles or the vehicles were involved in the collision ?
A. It was my left front fender and his right side of his truck.
Q. I see. Now at what point did you apply your brakes lightly as you approached the intersection?
A. Just as I passed this speed sign.
Q. Is that that 50-mile-an-hour speed sign?
A. That’s right.
Q. And can you say about how far you were from the intersection when you applied your brakes hard? That’s after he proceeded forward into the intersection?
A. Oh, just about how far I was from the intersection ?
Q. About, if you can give me that.
A. I don’t know. I’ll say about 30 or 40 feet.
Q. Now, Leola, at any time before or after you first applied the brakes lightly did you look down at either or any of your children ?
A. No, not as I know of.”
The testimony of James McCall was most inconclusive and can be summed up by his statement “I don’t know if she could have avoided the accident. Now I wouldn’t say for sure she could avoid it or I wouldn’t say she could avoid the accident at all.”
It is the opinion of this Court that the judgment of the Trial Court is correct and it is hereby affirmed.
Affirmed.