LANDRY, Judge.
As subrogee of its insured, Gerald Du-pont, American Insurance Company (American) prosecutes this appeal from the judgment of the trial court rejecting its demand for recovery of the sum of $2,709.00 paid its said policy holder for vehicular damages resulting from an intersectional collision in which Dupont’s automobile was struck by a car owned and being operated at the time by defendant, Winfred Speights. In rejecting appellant’s claim, we find the trial court committed reversible error.
The accident in question occurred at approximately 12:40 P.M., September 2, 1961, in the Parish of West Baton Rouge at the intersection of Louisiana Highway Number 983 (which runs north and south) and Louisiana Highway 620 (which courses in an easterly-westerly direction). Said juncture lies in open country outside the limits of any incorporated municipality. Both highways are two lanes, each having an improved blacktopped travel surface twenty feet in width. Highway 983 is the superior roadway by virtue of appropriately installed stop signs which admonish traffic proceeding easterly and westerly upon Highway 620 to stop before traversing the crossing. It is also shown that Highway 983 has four foot shoulders on either side of its paved surface. The width of the shoulders on intersecting Highway 620 is not disclosed. At the time of the accident the weather was cloudy but it was not raining and the highways were dry. A cattle pen is situated at the southwest corner of the intersection. It is shown that this structure impedes the southerly view of an eastbound motorist traveling upon Highway 620 as well as the westerly vision of a driver proceeding northerly along Highway 983. Both roadways are straight and level. The lawful speed limit on both roadways concerned is 60 miles per hour.
Immediately preceding the collision defendant, alone in his car, was proceeding easterly toward the intersection along inferior Highway 620. Simultaneously, appellant’s insured, accompanied by four guest passengers, was traveling northerly toward the juncture on Highway 983. The collision took place in the northbound lane of Highway 983, the front of the Speights car striking the Dupont automobile at its left front door. Following impact, Du-pont’s car continued northerly upon Highway 983 and eventually came to rest, in a field situated on the right or east side of Highway 983, about 300 feet north of the intersection. Speights’ car proceeded through the crossing and came to rest in a field on the right or south side of Highway 620 approximately 50 feet east of the intersection. No skid marks were left by either vehicle. It is conceded that neither driver was conscious of the presence of the other prior to the impact.
Plaintiff maintains the sole proximate cause of the accident was Speights’ negligence in failing to yield the right of way, traveling at an excessive speed and neglecting to maintain a proper lookout. Defendant contends he was free of negligence and that the accident resulted solely from the fault of Dupont in traveling at an excessive speed, failing to maintain a proper lookout and neglecting to keep his vehicle under control. Alternatively, defendant pleads Dupont’s contributory negligence in the foregoing respects.
Written reasons for judgment assigned by the trial court includes his finding both drivers guilty of negligence proximately causing the accident. In effect, he found Speights’ negligence to consist in failing to yield the right of way. He did not, however, specify the respect in which he found Dupont remiss.
*297 Corporal A. Z. Matherne, Louisiana State Police, who investigated the accident, testified to the hereinabove recited physical description of the locus of the accident. He also averred defendant related that he, defendant, stopped in obedience to the traffic sign before entering the intersection. Matherne further deposed Speights told him that he, Speights, was traveling about 35 miles per hour through the intersection. In addition, Matherne quoted Dupont as saying that he, Dupont, was proceeding at about 55 miles per hour when the accident occurred. Matherne’s investigation revealed that, after clearing the easterly end of the cattle pen, Speights could see to his right or southerly a distance of 75 to 100 feet along Highway 983.
Defendant Speights testified that before reaching the westerly end of the cattle pen, he looked to his right and could see a distance southerly along Highway 983 of at least one quarter mile. He observed no traffic approaching the intersection from this direction and continued until he reached the stop sign at which point he brought his vehicle to a halt. At this point he could not see to his right because the cattle pen obstructed his vision. Therefore, he crept slowly into the intersection, again looked to his right and, seeing no approaching traffic, proceeded to cross. According to Speights, he had to proceed about halfway across the southbound lane of Highway 983 before he could see any distance at all toward his right or to the south. His testimony leaves not the slightest doubt he did not at any time observe the Dupont vehicle.
Mr. Gerald Dupont testified in essence that he was proceeding at a speed of about 50-55 miles per hour in the right northbound lane of Highway 983. He never saw the Speights car and could only recall seeing a flash momentarily prior to the impact.
Nor could any of the guest passengers in the Dupont car throw any light upon the circumstances attending the accident. In substance they testified either that they did not see the Speights car or that they only observed it immediately prior to the collision.
From the record Speights’ negligence is established beyond doubt. He was on the inferior highway and, as regards traffic approaching from his right, was traversing what, for all practical purposes amounted to a blind -intersection because of the presence of the cattle pen which obstructed his view to the south. That he stopped in compliance with the traffic sign does not absolve him of fault. It .is settled law that a motorist confronted with a stop sign must not only stop in obedience to its mandate, but must also yield the right of way to a motorist approaching so closely upon the favored thoroughfare as to constitute a hazard to the driver crossing. LSA-R.S. 32:123; Emmco Insurance Company v. Carambat, La.App., 145 So.2d 83; Doucette v. Primeaux, La.App., 180 So.2d 866. Under the circumstances noted, defendant’s failure to see the oncoming Dupont car was negligence proximately causing the accident. The duty to look includes the obligation of observing what one could or should observe by the exercise of ordinary and reasonable care. Platt v. Scarborough, La.App., 108 So.2d 802. Had defendant seen the approaching Dupont automobile he should, as an ordinarily prudent driver, have realized it was so near the intersection as to make crossing imminently dangerous.
The serious question in this case is whether Dupont was guilty of negligence proximately causing the accident and appellant therefore barred from recovery through its said insured.
The allegation that Dupont was traveling at an excessive rate of speed is not substantiated by the evidence. In this regard defendant relies mainly on the fact that the Dupont automobile traveled about 300 feet northerly following the impact. This circumstance, however, does not necessarily imply excessive speed. It will be *298 recalled that Dupont was traveling within the legal limit of 60 miles per hour and that his vehicle was struck from the side. The impact caused him to lose control. The momentum of a vehicle thusly struck while traveling at the speed shown could well cause it to proceed an additional 300 feet.
The only serious issue before us is whether Dupont was guilty of negligence proximately causing the accident in failing to maintain a proper lookout and see the Speights vehicle in time to avoid the accident.
 Dupont’s negligence, if any, with regard to failure to maintain a proper lookout must be determined in the light of certain well recognized applicable principles of law. First of these is the rule that a motorist traveling on a favored roadway has the right to assume a driver on an inferior highway will obey the rules of the road and yield the right of way, which assumption obtains until the favored motorist sees or should see that the other driver will not stop and yield. Emmco Insurance Company v. Carambat, La.App., 145 So.2d 83; Westchester Fire Insurance Company v. Dardar, La.App., 158 So.2d 239. In addition, failure to maintain a proper lookout does not constitute the proximate cause of an accident unless the accident could thereby have been avoided. Theunissen v. Guidry, La.App., 151 So.2d 499.
Tested in the light of the foregoing principles of law, we conclude Dupont’s failure to observe the Speights vehicle was not a contributing factor as regards the accident in question. Had Dupont observed Speights, he could have done so only pri- or to the time Speights reached the cattle pen or after Speights emerged from behind the structure immediately before entering the intersection proper. Had Du-pont seen Speights before Speights proceeded to a point where his vehicle was obstructed by the cattle pen, Dupont would have observed Speights approaching at a reasonable speed under circumstances which justified the assumption Speights would stop before attempting to negotiate the intersection. At this time there was nothing in Speights’ conduct which would indicate to a reasonably prudent driver that Speights would not heed the stop sign. Once Speights’ vehicle was obstructed from view by the cattle pen, it did not again become observable to a northbound motorist proceeding upon Highway 983 until Speights cleared the structure. At this point we are convinced Dupont was so near the intersection there was nothing he could have done to avoid the collision had he then observed Speights. If, as Speights testified, he proceeded slowly into the intersection to get a better view to the south, had Dupont seen Speights at this time, he could have properly relied on the assumption Speights saw him and would not proceed but would stop and yield the right of way. If Speights were proceeding slowly as he testified, he could have stopped anywhere in the southbound lane of Highway 983 and the accident would not have happened. On the other hand, if Speights proceeded slowly into the intersection to the point where he could see and then suddenly accelerated (as he testified at one place in the course of his interrogation), there is absolutely nothing Dupont could have done to avert the impact.
Accordingly, the judgment of the trial court is reversed and set aside and judgment rendered herein in favor of plaintiff, American Insurance Company, and against defendant, Winfred Speights, in the full sum of TWO THOUSAND SEVEN HUNDRED NINE and 00/100 ($2,709.00) DOLLARS, together with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings.
Reversed and rendered.