HOOD, Judge.
This is an action for damages arising out of a motor vehicle collision. The plaintiffs are: Alton L. Rudisill, driver of one of the vehicles involved; Excel Insurance Company, the collision insurer and subrogee of Rudisill; and Millers Mutual Fire Insurance Company of Texas, the -liability insurer (with uninsured motorist coverage) and subrogee of Rudisill. The defendant is Richard A. Hunt, owner and driver of the other vehicle which was involved in the collision.
The defendant answered and filed a re-conventional demand claiming damages from Rudisill and his liability insurer, Millers Mutual Fire Insurance Company. Judgment on the merits was rendered by the trial court awarding damages to plaintiffs Rudisill and Excel Insurance Company, and rejecting defendant’s reconven-tional demand. Defendant Hunt has appealed.
The issues presented on this appeal are whether either or both of the drivers of the two vehicles were negligent, and if so, whether that negligence was a proximate and contributing cause of the accident.
The collision occurred about mid afternoon on April IS, 1967, at the intersection of Louisiana Highway 1200 and the Roy Hoyt Road, in Rapides Parish. Highway 1200 runs east and west. The Roy Hoyt Road runs in a northwest-southeasterly direction at that point, and it joins or connects with the north side of Highway 1200, forming a “T” or a “Y” intersection. Highway 1200 is blacktopped and is maintained by the state. The highway and the blacktopping end at the western edge of this intersection, however, and that part of the roadway which continues to run westward from the end of the highway is gravelled, is not maintained by the state and is known as the Thomas Gravel Pit Road. Highway 1200 and the Gravel Pit Road form a straight line, and the latter appears to be a continuation of the highway. The Roy Hoyt Road also is gravelled, and it forms about a 60 degree angle with the-highway at the point where the two thoroughfares join.
" 'This intersection was uncontrolled at the time of the accident. Neither Highway 1200 nor the Roy Hoyt Road had been designated by law or by ordinance as being a preferred road, and there were no signs or markers in that vicinity indicating that motorists on one road had the right of way over motorists on the other.
The weather was clear and dry and visibility was good when the accident occurred. Some trees located near the intersection, however, prevented motorists trav-elling west on the highway and motorists travelling southeast on the Hoyt Road from seeing each other until they reached points near the junction.
Immediately before this accident occurred plaintiff Rudisill was driving his pick-up truck west on Highway 1200, at a speed of approximately 40 miles per hour. He intended to drive through the intersection and to continue to- travel west on the Thomas Gravel Pit Road. When he reached a point about midway through the intersection, and while still in the westbound lane of traffic on the highway, the right side' of his truck was struck by the right front part of the Hunt automobile. Defendant Hunt at that time was driving his automobile in a southeasterly direction on the Roy Hoyt Road at a speed of about 25 miles per hour. He intended to turn to his left at the intersection and to drive east on Highway 1200. The collision occurred shortly after he entered the crossing.
The point of impact was on the hard surfaced slab, in the westbound lane of traffic of Highway 1200, about six feet south of the north line of that highway. It is appar *68 ent, therefore, that the front of the Rudisill truck had traveled more than one-half the distance through the intersection, and the front of the Hunt automobile had travelled a distance of only about six feet into the crossing, before the collision occurred.
There were no eye witnesses to the accident other than the drivers of the two vehicles which were involved. Plaintiff Rudisill testified that he did not see the Hunt vehicle until “a second or two” or “a split second” before the impact, that he was “right at the intersection” when he first saw Hunt, and that he did not have time to “whip” his truck to the left or to apply his brakes before the collision occurred. He stated that he had lived in that area for almost SO years, that he drove through that intersection daily, that he was thoroughly familiar with it, that he knew that there were no traffic signs at that junction, and that he considered the intersection to be a dangerous one. He explained, however, that he is used to seeing motorists on the Hoyt Road stop before they proceeded into the intersection, and that “we never think of anybody not stopping.”
Defendant Hunt testified originally that he did not see the Rudisill truck “until the accident.” Later in his testimony he stated that he first saw the truck when he was about 20 feet from the point where the vehicles collided, and that the Rudisill vehicle at that time was 125 to 150 feet from that point. He stated that he tried to bring his automobile to a stop in time to avoid a collision, but that he was unable to do so. Hunt also acknowledged that he had been driving through that intersection for four or five years, and that he was thoroughly familiar with it. He stated that there is “no law or nothing” at that junction, and that he relied on the assumption that every other motorist would “yield to the man on the right.”
The trial judge found that “by custom” Highway 1200 had become the preferred thoroughfare at that intersection, and that plaintiff thus had the right of way. He concluded that defendant Hunt was negligent and that plaintiff Rudisill was free from contributory negligence.
In holding that the highway had become a preferred thoroughfare by custom, the trial judge cited and relied on the case of Fidelity & Casualty Company of New York v. McCasland, 203 So.2d 756 (La.App.3d Cir. 1967). In that case we quoted some language which had been used by the trial court to the effect that even if no stop signs had been used at the intersection involved there, one of the streets nevertheless would have become a preferred thoroughfare “by custom and usage.” The language so used was dictum, because the trial court found, and we agreed, that actually there were stop signs at the intersection where the accident occurred.
The road which was found to be preferred in the McCasland case, however, was a service road for, and it ran parallel to, a heavily travelled four lane divided highway which bypasses the City of Alexandria. The speed limit on the service road, as well as on the main four lane highway, was 60 miles per hour. The intersecting street, which we found to be inferior, was a “cross over road,” which crossed the main four lane highway and the service roads. We think the marked difference in the purpose of and the traffic on those two intersecting streets should indicate to a motorist on either that the service road, on which high speed traffic was allowed, was the preferred route.
The facts in the instant suit are different from those in the McCasland case. Here, the evidence shows that the Roy Hoyt Road was a substantial thoroughfare, of about the same width and type of construction as was the Thomas Gravel Pit Road. The state trooper who investigated the accident testified that there was “quite a bit of traffic” on the Hoyt Road. The photographs which were filed in evidence show that a motorist approaching the crossing while travelling west on Highway 1200 would be confronted with a fork in the *69 road, or a “Y” intersection, with one substantial gravel road going straight ahead and another equally substantial gravel road branching off at an angle to the right. The evidence does not indicate that there was any difference in the speed limit on any of these intersecting roads.
Plaintiff Rudisill testified, as we have already noted, that he was used to seeing motorists on the Hoyt Road stop before entering the intersection. Yet, he considered this intersection to be a dangerous one. It seems to us that there would be little danger if motorists on the Hoyt Road were as accustomed to stopping at the intersection as was indicated by plaintiff. Defendant Hunt testified that he always considered the junction to be a “three way intersection,” where a motorist was required to yield to a vehicle approaching on his right. The investigating state trooper stated that he considered this intersection to be “a dangerous point” because motorist on Hoyt Road would become “confused” as they came to the end of that road and entered Highway 1200. Although his testimony is not clear, we understand his statements to be that motorists on Hoyt Road would not realize that there was an intersection as they approached, but they sometimes considered the highway to be a continuation of Hoyt Road.
We have concluded that the evidence in the instant suit fails to establish that it has been the general or time honored custom of motorists on Hoyt Road to yield the right of way to vehicles on Highway 1200. Since we have determined that the evidence fails to show such a custom, it is unnecessary for us to consider the legal question of whether custom and usage alone may make one road superior to another at an intersection.
Since plaintiff Rudisill did not have the right of way, he did not have the right to assume that Hunt would yield to him. The evidence shows that Rudisill could have seen the other vehicle approaching when he was 150 feet from the intersection. If he had been maintaining a proper lookout he would have seen the Hunt automobile in ample time to avoid a collision. We conclude that plaintiff Rudisill was negligent in failing to maintain a proper lookout, and that his negligence in that respect was a proximate and contributing cause of the accident.
Defendant Hunt contends that since the Hoyt Road and Highway 1200 were streets of equal dignity, he had the right to assume that Rudisill, who was approaching the intersection from Hunt’s left, would yield the right of way to him. He takes the position that he had the right of way, and that the sole proximate cause of the accident was Rudisill’s negligence in failing to yield to him. He refers us to LSA-R.S. 32:121(B), which provides:
“When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right.”
This provision of the Revised Statutes has been held to apply to a “T” intersection, as well as to other types of crossings. State Farm Mutual Automobile Insurance Company v. Niagara Fire Insurance Company, 183 So.2d 145 (La.App. 1st Cir. 1966).
Plaintiffs argue persuasively that we should reject the rule which was applied in the Niagara Fire Insurance Company case, supra, and should hold that LSA-R.S. 32:121(B) does not apply in a case such as this. We are unable to agree with plaintiffs in that argument. In our opinion the cited section of the Revised Statutes does apply in this instance. We have concluded, however, that even though that section is applicable, defendant Hunt nevertheless was guilty of actionable negligence which bars him from recovery.
The general rule is that a motorist who is travelling on a preferred street at an intersection which is controlled by traf- *70 fie signs or signals may assume that other motorists on inferior streets will obey the law and will yield the right of way to him, and he may indulge in that assumption until he sees or should see that another motorist has not observed or is not going to observe the law. Emmco Insurance Company v. Carambat, 145 So.2d 83 (La.App. 4th Cir. 1962); American Insurance Company v. Speights, 206 So.2d 295 (La.App.1st Cir. 1968).
Where the intersecting streets are of equal dignity, a motorist who has the right of way under LSA-R.S. 32:121(B) because the other vehicle is approaching from his left, is nevertheless required to exercise reasonable care as he approaches the intersection, including the obligation of maintaining a proper lookout. The degree of care which is required of the operator of a motor vehicle approaching an intersection from the right, when streets are of equal dignity, is much greater than that imposed on the driver approaching an intersection on a favored or right of way street which is controlled by signs or traffic signals. James v. Employers Liability Assurance Corporation, 202 So.2d 424 (La. App.4th Cir. 1967); Smith v. Borchers, 243 La. 746, 146 So.2d 793 (1962); Veith v. Travelers Insurance Company, 204 So.2d 671 (La.App.4th Cir. 1967).
The degree of care which a motorist on a preferred thoroughfare is required to exercise increases when he approaches an intersection of unusual or irregular design, and one which he knows to be dangerous. When the superior driver sees, or reasonably should see, that the inferior traffic will continue its approach and will not yield the right of way, then the former is required to take every precaution to avoid a collision, and he is negligent if he fails to do so. Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 (1960); Davis v. Aetna Casualty & Surety Company, 191 So.2d 320 (La.App.3d. Cir. 1966).
The intersection involved in the instant suit was of unusual or irregular design. Defendant Hunt was familiar with it, and he knew that it was uncontrolled by traffic signs or signals. He knew, or should have known, that it was a dangerous intersection. Under those circumstances we think he was under a duty to exercise a much greater degree of care than would be required of a motorist on a preferred thoroughfare who approaches a controlled intersection.
The evidence shows that Hunt could easily have brought his automobile under control if he had maintained a proper lookout. He was negligent in failing to maintain such a lookout, and his negligence in that respect was a proximate and contributing cause of the accident, barring him from recovery.
Since ’ we have found that both drivers were negligent, and that the negligence of each was a proximate and contributing cause of the accident, we must reverse that part of the judgment appealed from which awards damages to the plaintiffs, and we will affirm that part which rejects defendant’s reconventional demands.
For the reasons herein assigned, that part of the judgment appealed from which condemns defendant to pay damages to plaintiffs Alton L. Rudisill and Excel Insurance Company is reversed, and the demands of said plaintiffs are hereby rejected. That portion of the judgment appealed from which dismisses and rejects the re-conventional demands of defendant Richard A. Hunt is affirmed. The costs of this suit and of this appeal are assessed to plaintiffs-appellees.
Affirmed in part, and reversed in part.