270 So.2d 637 (1972)
Ina C. SMITH et vir, Plaintiffs-Appellees,
v.
TRINITY UNIVERSAL INSURANCE COMPANY et al., Defendants-Appellants.
No. 11920.
Court of Appeal of Louisiana, Second Circuit.
September 12, 1972.
*638 Lunn, Irion, Switzer, Johnson & Salley by Richard H. Switzer, Mayer & Smith, by Charles L. Mayer, Shreveport, for defendants-appellants.
Godfrey & O'Neal, by Hodge O'Neal, III, Many, for plaintiffs-appellees.
Before BOLIN, PRICE and HALL, JJ.
BOLIN, Judge.
Plaintiffs, husband and wife, seek damages for injuries sustained by Mrs. Smith in an automobile accident occurring in the vicinity of the intersection of Linwood Avenue and McCarey Street, Caddo Parish, Louisiana.
Made defendants are Robert Q. Hermes, his liability insurer Trinity Universal Insurance Company, and Lumbermens Mutual Casualty Company. Lumbermens is sued under the uninsured motorist provision of the liability policy issued by that company to plaintiffs. Following trial the lower court rendered judgment against all defendants in solido and in favor of plaintiffs for $18,567.35, with the judgment against the insurers being limited to the amount of coverage under the respective policies. Defendants have appealed and plaintiffs answered the appeal asking only that the judgment be affirmed. We affirm the judgment.
There is no dispute regarding the quantum of the award or the physical facts existing at the time of the accident. There is considerable conflict in the testimony concerning the actions of various parties involved as well as the law applicable to these actions.
The accident occurred Sunday, November 8, 1970 at about 12:30 p. m. and the weather was clear and dry. Mr. Hermes, accompanied by his wife and children, was driving his station wagon south on Linwood returning home from church. Mrs. Ina C. Smith was driving a Volkswagen north on Linwood returning from having delivered some cosmetics which she had sold. Ronald Walker, the uninsured motorist, was driving a Dodge automobile east on McCarey and was preparing to enter Linwood from the west. At the time of the occurrence of this accident neither Linwood Avenue nor McCarey Street was designated as having the right of way, either by ordinance or by stop signs. Thus the juncture of the streets constituted an uncontrolled T-intersection with McCarey Street forming the base of the T.
The collision occurred between the southbound Hermes vehicle and the northbound Smith vehicle as both drivers drove on the east side of Linwood into a ditch. Hermes testified that when he was approximately 100 feet from the intersection he observed Walker proceeding at a slow rate on McCarey. He estimated his own speed at 35 or 40 miles per hour but he made no effort to apply his brakes until he realized Walker was not stopping but was actually entering Linwood. He testified he applied his brakes, skidded some distance and turned his car toward the left to avoid striking the Walker car, which he stated was partially blocking the southbound lane of Linwood. He then noticed the Volkswagen *639 in the northbound lane and drove into the ditch in an attempt to avert a collision.
Mrs. Smith testified she observed the Hermes car coming over into her lane of travel and she turned to the right, drove onto the shoulder of the road and into the ditch to avoid striking the oncoming car. In the ensuing collision Mrs. Smith suffered severe injuries. Neither car struck the Walker vehicle.
Walker's testimony contradicts that of Hermes in some respects. He stated he stopped before reaching Linwood, looked to his right, observed the Volkswagen some distance away, looked to his left but, because of foliage and mailboxes, was unable to see traffic coming from his left. He said he pulled up a short distance, stopped and then saw the Hermes station wagon coming at a rapid speed. It appeared to him the driver had applied his brakes but had lost control of his vehicle which thereafter went into the ditch where it struck Mrs. Smith's car. Walker denied his car encroached on the southbound lane of travel on Linwood but stated he could have been two inches into that lane. However, by the time the investigating officer arrived Walker had backed his vehicle on McCarey and had parked it. Thus it was impossible to confirm just how far he had encroached on the southbound lane of Linwood.
None of the defendants charged Mrs. Smith with negligence. The trial judge gave no written reasons for his judgment and the question before this court, therefore, is whether all the circumstances and evidence support his finding that both Hermes and Walker were guilty of negligence which caused the accident in which Mrs. Smith was injured. A secondary question, which will be discussed later, is that of the "stacking" of insurance coverages. That is, since Mrs. Walker can recover $10,000 from Trinity Universal [assuming we concur in the finding that Hermes was negligent], can she also enforce the judgment against Lumbermens for the $5000 coverage provided in the uninsured motorist clause since the latter policy contains a "reduction" provision applicable to the uninsured motorist coverage?
Trinity Universal and Hermes charge error in the lower court's failure to find the accident was caused solely by the negligence of Walker. Basis for this contention is that the driver of a vehicle who stopped before entering a thoroughfare, then started up again, and then stopped, blocking the lane of travel for vehicles approaching from his left, is solely at fault for an ensuing accident. These appellants contend Walker's first stop was observed by Hermes and constituted an "invitation" for Hermes to proceed. [The testimony of Hermes does not bear out this contention.] Further, appellants assert the rule applicable to T-intersections is different from that for intersections where both streets are continuing thoroughfares, citing Blashfield Automobile Law and Practice, Vol. 3, Sec. 114.75. However, it is settled in Louisiana that the same rules governing the statutory right of way apply both to a T-intersection and a four-way intersection. See State Farm Mutual Automobile Insurance Co. v. Niagara Fire Insurance Co. (La.App.1st Cir.1966) 183 So.2d 145, and Excel Insurance Co. v. Hunt (La.App.3d Cir.1969) 221 So.2d 65.
Contrary to the above contentions, counsel for Lumbermens points to the testimony of Walker that his vehicle entered the left lane of Linwood no more than two inches, if any. Further, in support of his position that Walker was free of negligence, he cites Louisiana Revised Statute 32:121(B) and three cases decided by this court: Allen v. State Farm Mutual Automobile Insurance Co. (La.App.2d Cir.1960) 120 So. 2d 372; Noonan v. London Guarantee and Accident Company (La.App.2d Cir.1961) 128 So.2d 918; and Gorman v. Indemnity Insurance Co. of North America (La.App. 2d Cir.1961) 134 So.2d 602.

*640 Louisiana Revised Statute 32:121 provides:
* * * * * *
"B. When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right."
For an interpretation of the preceding article appellants, Trinity Universal and Hermes, and appellees have relied on the decision in Smith v. Borchers, 243 La. 746, 146 So.2d 793 (1962). That case involved the collision of two automobiles at an uncontrolled intersection of two streets in the City of New Orleans, both streets being of equal dignity. Plaintiff testified she looked to her right and then to her left but failed to observe defendant's automobile until immediately prior to the collision although her view to her left, from whence defendant approached, was unobstructed for approximately 120 feet. Defendant also testified he did not see plaintiff's car until just before it struck the side of his vehicle in about the middle of the intersection. The Fourth Circuit Court of Appeal affirmed the trial court's dismissal of plaintiff's suit on the basis of a finding of contributory negligence and certiorari was granted. The Louisiana Supreme Court affirmed the dismissal, citing numerous cases dealing with accidents occurring at uncontrolled intersections of streets of equal dignity. The majority opinion in Smith v. Borchers held plaintiff guilty of contributory negligence in failing to see what she could have seen had she looked to her left. This holding appears to us clearly to overrule Allen, Noonan and Gorman, supra, relied on by Lumbermens, although the majority declares those cases were decided on the facts of each case and not on a general principle of law.
We believe the confusion existing by reason of the decisions in Allen, Noonan and Gorman, has been finally dissipated. Further, the distinction between the law applicable to controlled intersections and that applicable to uncontrolled intersections [where the driver approaching from the right is accorded the statutory right of way by La.R.S. 32:121, subd. B has been clarified, particularly in Justice McCaleb's concurring opinion in Smith:
"I am in full accord with the findings of the main opinion. Additionally, I believe it important to stress the fact that plaintiff was not travelling on a right-of-way streetfor, under all of our recent cases, we have given increasing recognition to the right of motorists travelling on right-of-way streets to assume that traffic approaching intersections from less favored streets will observe the law, by stopping in obedience to stop signs or traffic semaphore lights. It is only in exceptional circumstances, where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation, that he will be found derelict. See Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328, 329; Steele for Use and Benefit of Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 50, 115 So.2d 339 and Youngblood v. Robison, 239 La. 338, 118 So.2d 431.
"The intersecting streets involved in this case, Nighthart and Pressburg, are of equal dignity as noted in our opinion. Therefore, it was incumbent upon plaintiff to use reasonable care in her approach to the intersection including, of course, the duty to exercise a proper lookout, as R.S. 32:237 [now R.S. 32:121(B)] did not grant plaintiff a general right-of-way over vehicles on Nighthart approaching from her left but only over such vehicles which approached or entered the intersection at `approximately the same time' as plaintiff.
"The degree of care required of a driver approaching an intersection from the right when the streets are of equal dignity, *641 is much greater than that imposed on a driver approaching an intersection on a favored or right-of-way street, or on a favorable traffic semaphore. In the latter instances, he need exercise only slight care as he is entitled to assume that cross traffic will comply with the law and yield the right-of-way. But, when the intersecting streets are of equal dignity, a motorist has the duty of ascertaining, before he can claim the right to proceed accorded by R.S. 32:237 [R.S. 32:121(B)], whether he has arrived or entered the intersection at about the same time as the vehicle, as cross traffic reaching the intersection first (provided it did not get there as a result of excessive speed) has the right to enter, preempt and complete the crossing notwithstanding the fact that there are other vehicles within the vicinity of the intersection approaching it from the right. The privilege accorded by R.S. 32:237 [R.S. 32:121(B)] is a conditional one, a right entirely dependent upon the location of other traffic approaching the intersection."
The law set forth above relating to the duties imposed on drivers approaching an uncontrolled intersection, where one party is claiming a statutory right of way, has been followed in Excel Insurance Company v. Hunt (La.App.3d Cir.1969) 221 So.2d 65 and in Young v. Sea Insurance Company (La.App.1st Cir.1965), 173 So.2d 362.
From our review of the record we conclude the trial judge, who observed the witnesses, correctly assessed liability against both drivers, Hermes and Walker, whose concurrent breaches of duty precipitated the accident and resultant injuries. Applying the rationale of Smith to the facts of the case presently before us we conclude that, although Walker was approaching the intersection from Hermes' right, his entry into the intersection without first ascertaining he could safely negotiate his maneuver constituted negligence which was a proximate cause of the ensuing accident. Hermes, approaching the intersection from Walker's left, had not preempted the intersection. By his own admission he continued driving at 35 miles per hour until he observed Walker entering his lane of travel. We find that by continuing to drive at this speed he failed to exercise the care and caution required of him in order to bring his car to a safe stop to avert the accident. This negligence was a concurring and proximate cause of the accident.
This brings us to the legal question raised by appellees' insurer, Lumbermens Mutual: Can plaintiffs recover from Hermes and his insurer and their own insurer, under the uninsured motorist provision of their own policy, since the Walker vehicle was uninsured. This policy contains a "Reduction Clause" under the uninsured motorist part of the policy which states:
"Any amount payable under the terms of this Part because of bodily injuries sustained in an accident by a person who is an insured under the Part shall be reduced by
(1) All sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury . . . and
(2) The amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law."
It is argued the above provision allows the uninsured motorist insurer a credit against its exposure to the extent of all sums collected by Mrs. Smith from Hermes and his insurer who were found solidarily liable with Walker. If this argument is valid the judgment against Trinity for $10,000 would have the effect of exonerating Lumbermens from any liability since the latter's maximum exposure is $5000 under *642 the policy. Query: is an excess insurance clause or a "reduction" clause prorating liability in such manner legal in Louisiana?
The foregoing argument has been explored and thoroughly briefed by both appellants and appellees. However, we think the question has been laid to rest by two rather recent decisions of the Louisiana Supreme Court. In both cases the interpretation of Louisiana Revised Statutes 22:1406, subd. D, was the central issue. That statute provides, in pertinent part:
"D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage." (Emphasis ours)
The minimum coverage provided by the Motor Vehicle Safety Responsibility Law of Louisiana is $5,000 for one person in one accident or $10,000 because of bodily injury or death of two or more persons. (La.R.S. 32:872, subd. C)
In Graham v. American Casualty Company of Reading, Pa., 261 La. 85, 259 So. 2d 22 (1972) the injuries to plaintiff, inflicted by an uninsured motorist, exceeded the combined exposure of three policies, all issued to petitioners by Southern Farm Bureau Casualty Insurance Company and each containing the required uninsured motorist provision. The policies also contained restrictive clauses purportedly requiring proration where there was other similar insurance available to the injured party. The trial court gave effect to the proration clauses and condemned insurer, Southern Farm Bureau Casualty Insurance Company, to pay only $5000, although petitioners' injuries far exceeded the combined coverage of the three policies. On appeal this judgment was affirmed. On certiorari the Louisiana Supreme Court reversed and held:
"Read in connection with the above statutory requirement, [R.S. 22:1406] the second paragraph of the `other insurance' provisions of the policies under consideration cannot be given the meaning Southern Farm advocates.
"Although the statute quoted requires uninsured motorist protection and sets forth the minimum coverage the policies must provide, it does not prohibit or prevent an insurer from offering more than the minimum coverage specified. Thus there is no impediment to an injured party recovering more than the statutory minimum under an uninsured motorist endorsement. Nor does the law prevent an injured insured under uninsured motorist coverage from recovering the minimum from more than one insurer if the damage sustained warrants such a recovery. What the law does require is that each policy issued provide not less than the minimum $5,000 coverage. Proration does not take place when the damage claimed exceeds the sum of the policies under which the claimant is entitled to recover benefits under the uninsured motorist protection.
"Any effort to reduce the mandatory minimum coverage of each policy by `pro rata' clauses cannot be given effect by the courts."
*643 The court concluded plaintiffs were entitled to the full $5000 coverage afforded by each of the three policies, or $15,000.
A similar decision was reached in Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972) wherein the court allowed a total recovery of $20,000 under three policies covering uninsured motorists even though each policy had an "other insurance" clause similar to the one in Graham. We conclude the "reduction" clause contained in the policy in the instant case is unenforceable.
The judgment is affirmed at appellants' costs.