LANDRY, Judge ad hoc.
Plaintiff, St. Paul Fire and Marine Insurance Company, subrogee of its assured .Willard L. Calloway, has taken this appeal from the judgment of the lower court rejecting plaintiff’s demand against said assured Calloway and one Verry Gallien for the sum of $597.50 paid Calloway pursuant to a policy of collision insurance covering a 1954 Plymouth Tudor automobile belonging to Calloway and which said vehicle was totally destroyed in a collision with a 1956 Ford pickup truck owned and being operated by Gallien. The accident in question occurred March 1, 1957.
Following said accident, plaintiff insurance company, on March 25, 1957, paid its assured Calloway the sum of $597.50 (the value thereof less an amount obtained for its salvage and the sum of $50 deducted from its value according to the policy provisions), and obtained from its said assured a subrogation agreement wherein Calloway subrogated plaintiff to all his rights against the third party, Gallien.
Subsequent to signing the subrogation agreement in favor of plaintiff, Calloway granted Gallien a release on a form provided by the Department of Public Safety, Responsibility Division, State of Louisiana, discharging Gallien from responsibility for all claims arising from said accident, said release from Calloway to Gallien being dated April 19, 1957.
Plaintiff’s claim against the third party Gallien is predicated on the theory that the release from Calloway is null and void considering Calloway had previously sub-rogated plaintiff to all his rights against Gallien and Gallien’s negligence being the sole cause of the accident, plaintiff is entitled to recover from him the amount paid plaintiff’s assured Calloway.
As against its assured Calloway, plaintiff’s demand is founded on the principle that the subrogation agreement executed by Calloway prohibits his releasing from liability anyone who may be responsible in damages for destruction of the insured vehicle and, granting of such discharge by Callo-way constitutes an active breach of plaintiff’s antedated subrogation contract thereby conferring upon plaintiff the right to recover from Calloway the amount paid him.
Defendant Gallien neither appeared nor defended the action in any manner. Preliminary default was entered against him but after trial on the merits, the lower court found him to be without fault and rejected plaintiff’s demand against him.
Defendant Calloway filed an exception of prematurity based on the ground that even though his granting of a release to Gallien was expressly prohibited by the terms of the subrogation agreement of March 25, 1957, plaintiff has no legal right to seek recovery from him of the amount paid until such time as Gallien shall assert the release in bar of plaintiff’s claim. Calloway also filed exceptions of no right and no cause of action based on the contention that plaintiff’s rights were fixed at the time subrogation was granted and no subsequent action of either Calloway or Gallien could prejudice plaintiff’s rights against Gallien in the event Gallien were guilty of negligence constituting a proximate cause of the accident in which the loss occurred. In this connection, counsel for defendant Cal-loway argues that since the subrogation agreement to plaintiff preceded the release to Gallien said release is, therefore, null and void insofar as plaintiff is concerned and only served to discharge Gallien from any claim which Calloway may have had against him for the $50 loss not covered under Calloway’s policy.
The lower court overruled the exceptions of prematurity and no cause and no right of action filed on behalf of defendant Cal-loway following which said defendant filed an answer setting forth as a defense on the merits the same contentions made in support of his said exceptions. After hearing the matter on the merits, the trial court found as a fact that defendant Callo-way had the last clear chance to avoid the accident and dismissed plaintiff’s claim against both defendants.
*574 In overruling tire exceptions filed on behalf of defendant Calloway, the lower court relied upon the authority of Travelers Fire Ins. Co. v. Ackel, La.App., 29 So.2d 617, which held that release of a third party by an assured constitutes a breach of a subro-gation agreement by the assured to his insurer entitling tire insurer to return of the amount paid the assured even though the insurer has not exhausted its rights against the third party.
The law of our state relative to subrogation is found in Articles 2159-2162 L.S.A. Revised Civil Code. The term sub-rogation has been defined by the courts of this state as the right of a person secondarily liable for a debt or obligation which he is compelled to discharge, to assume all the rights of the principal creditor against a third party who may be legally responsible for the amount paid. Motors Insurance Corporation v. Employers’ Liability Assurance Corporation, La.App., 52 So.2d 311.
Although it possesses some attributes and characteristics of a sale, an act of subrogation is not a sale, transfer or assignment but rather a substitution of one claimant for another. As between an insurer and its assured, subrogation takes place by operation of law in those instances in which the insurer pays its assured a sum of money pursuant to a policy covering damages to property of the assured. Motors Insurance Corporation v. Employers’ Liability Assurance Corporation, supra.
Travelers Fire Ins. Co. v. Ackel, 29 So.2d 617 (relied upon by the court below) was decided by the Court of Appeal, Second Circuit, and held that a release granted by an assured to a third party prior to execution of an act of subrogation to his insurer, operates as a valid cancellation and discharge of all rights which the assured possessed against the third party thereby extinguishing the obligation of the third party to both insurer and assured. This case further held that an assured who executes a release to a third party prior to subrogating his rights to his insurer, violates his contractual obligation to the insurer thereby rendering the assured liable to the insurer for any amount paid.
For reasons hereinafter set forth, we deem it unnecessary to consider either the applicability of the Ackel case, supra, or the validity of the release herein relied upon by plaintiff as the basis of its suit against its assured Calloway.
The purpose of a contract of sub-rogation is to afford the subrogee the opportunity of a day in court to seek recovery from the third party allegedly answerable for such loss as the subrogee has been called upon to pay. Under the terms of the policy issued Calloway and the subrogation agreement received from him, plaintiff acquired the right and privilege of seeking reimbursement from Gallien of the amount paid Calloway. Among the rights thus acquired by plaintiff was that of instituting legal action against Gallien to seek to establish his liability to plaintiff for the amount plaintiff has been compelled to pay its assured Calloway.
A determination of this case does not require decision on the issue of whether the release by Calloway constituted an active breach of his contractual obligation to plaintiff. Assuming arguendo the release to Gallien was valid (an issue upon which we refrain from ruling herein), plaintiff has in no way been aggrieved thereby considering Gallien has not urged said release as a defense to plaintiff’s claim against him.
In the case at bar, both the assured and third party were sued in a single action. The third party, Gallien, has not resisted plaintiff’s demand against him despite his holding a release from plaintiff’s assured. Said third party has not offered or urged the release in opposition to plaintiff’s claim. No substantive or procedural right of plaintiff arising from the policy and subrogation agreement between plaintiff and its assured has been denied or adversely affected in any manner whatsoever.
*575 Plaintiff has been afforded and has taken full advantage of every legal right and privilege conferred by the terms of the policy and subrogation contract. The rights of plaintiff as against the third party Gallien have been fully adjudicated and plaintiff has had its day in court. No right or privilege held by plaintiff under the terms of the policy and subrogation agreement has been prejudiced, denied or rendered more onerous to any degree whatsoever, consequently, under the circumstances existing herein, the validity or nullity of the release from Cal-loway to Gallien is a matter of no importance. Assuming the release to be valid (an issue upon which we express no opinion herein) it would avail plaintiff nothing because Gallien has not seen fit to invoke its provisions in defense of plaintiff’s action.
The exceptions of prematurity and no cause of action filed on behalf of defendant Calloway were properly and timely filed and should have been sustained by the lower court. The action of the lower court in overruling said exceptions was erroneous and must be reversed.
The exception of no right of action filed on behalf of defendant Calloway was properly overruled by the court below. An exception of no right of action is, properly speaking, an exception of want of interest and addresses itself to the capacity of the party instituting suit. Leteff v. Maryland Casualty Company, La.App., 82 So.2d 80. The grounds urged by Calloway in support of his exception of no right of action do not concern themselves with the capacity of plaintiff to institute suit or stand in judgment herein.
The court below dismissed plaintiff’s demand against Gallien upon the finding that Calloway had tire last clear chance to avoid the accident. In so doing, we believe that the learned judge of the trial court fell into error.
The issue thus presented is purely factual and, while we are not unmindful of the oft repeated rule that the finding of a trial court on a matter of fact will not be disturbed unless manifestly erroneous, in view of the evidence in the record, we feel constrained to reverse the decision of the lower court in this instance.
In this connection, it is desired to point out that the only evidence concerning the occurrence of the accident consists of the testimony of Calloway. Pie testified he was traveling in open rolling hill country at a speed of approximately 50 miles per hour and upon ascending a rise from a valley to level roadway, he observed the oncoming Gallien truck approximately ISO— 200 feet away traveling at an estimated speed of 25 miles per hour some two or three feet left of the center of the highway. He slowed the speed of his vehicle thinking that Gallien would return to his proper side of the highway and upon realizing that Gallien would not do so, he directed his vehicle toward the right but the left front fender of his automobile was struck by the left front fender of the Gallien truck inflicting the damages herein sued on. According to Calloway, Gallien was attempting a left turn onto an intersecting cross road without giving any visible signal of his intention to execute such maneuver.
In her written reasons for judgment, the learned trial judge held that Calloway could have avoided the accident by either stopping or driving to the left instead of the right and that Gallien (whom she found had commenced his turn) could do nothing but proceed to complete his intended maneuver.
We do not agree that Calloway had the last clear chance to avoid the accident under the circumstances shown. Calloway was proceeding at a lawful speed on his own proper side of the highway and had a right to assume Gallien would take notice of the approaching vehicle and direct his truck into its lawful lane of travel thereby averting a collision. Since Gallien gave no left turn signal, Calloway cannot be legally charged with knowledge of the fact that Gallien intended to complete a left turn and that he, Calloway, could have avoided the accident by also turning left.
*576 We do not believe Calloway could have avoided the accident by stopping for it must be remembered that the vehicles were in close proximity to each other when Callo-way first noted the presence of the Gallien truck. At this time, Calloway was traveling approximately 50 miles per hour and the truck approximately 25 miles per hour. As previously stated, Calloway had the right to assume Gallien would see Callo-way’s oncoming automobile. When it became evident to Calloway that Gallien would not accord him the right of way to which he was entitled, the two vehicles were so near each other that collision between them was inevitable.
The evidence also shows that Gallien was attempting to turn at a cross road and had commenced his turn by drifting to the left of the center of the highway before reaching the intersection. Such action constitutes negligence which, coupled with his failure to keep a proper lookout, failure to signal his intended left turn and failure to yield Calloway the right of way, was the sole proximate cause of the accident involved.
It is shown in the record that plaintiff paid Calloway the sum of $597.50, being the market value of Calloway’s 1954 Plymouth Tudor Sedan ($810), plus a towing charge of $13, less the sum of $175.50 (salvage value of the damaged automobile) and $50 (deductible pursuant to the policy provisions).
For the reasons herein assigned, the judgment herein appealed from is affirmed insofar as it overruled the exception of no right of action filed herein on behalf of defendant Willard L. Calloway, reversed insofar as it overruled the exceptions of prematurity and no cause of action filed on behalf of said defendant Calloway, and reversed insofar as it dismissed plaintiff’s demand against defendant Verry Gallien and judgment rendered herein sustaining the exceptions of prematurity and no cause of action filed on behalf of defendant Willard L. Calloway and dismissing plaintiff’s demand as to said defendant and judgment also rendered herein in favor of plaintiff St. Paul Fire & Marine Insurance Company against defendant Verry Gallien in the sum of $597.50 together with legal interest thereon at the rate of five (5%) per cent per annum from date of judicial demand, until paid. Costs to be paid by defendant Verry Gallien.
Affirmed in part and reversed in part.