298 So.2d 907 (1974)
Mrs. Beverly Ann Hebert MOREAU, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO et al., Defendants-Appellees.
No. 4540.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied September 4, 1974.
Writ Granted October 25, 1974.
*908 Charles J. LeBlanc and Caillouet & Wise by Jack B. Wise, Thibodeaux, for plaintiff-appellant.
L. Albert Forrest, New Iberia, and Willis & Hardy by George W. McHugh, Jr., St. Martinville, for defendants-appellees.
Before FRUGÉ, HOOD and DOMENGEAUX, JJ.
HOOD, Judge.
Mrs. Beverly Ann Hebert Moreau, widow of Bobby Gene Moreau, instituted this suit for damages occasioned by the death of her husband who died from injuries which he sustained in a motor vehicle collision. One of the defendants is State Farm Mutual Automobile Insurance Company. The trial court rendered a summary judgment dismissing the suit as to that defendant, and plaintiff has appealed.
A companion suit arising out of the same accident was consolidated for trial and appeal with this case. The trial court rendered a summary judgment dismissing that suit as to State Farm, and the plaintiff appealed. We are rendering a separate judgment in that companion suit on this date. See Hebert v. State Farm Mutual Automobile Insurance Company, 298 So.2d 914 (No. 4541 on the docket of this court).
The sole issue presented on this appeal is whether an exclusionary clause in the uninsured motorist provisions of several automobile insurance policies issued by State Farm is valid, and whether that clause operated to relieve that insurer from liability in these cases.
The accident occurred at about 6:40 P. M. on June 7, 1970, on U.S. Highway 90, in Iberia Parish. The decedent, Moreau, was driving his Dodge truck east on that highway, towing a trailer, and Robert J. Hebert was riding with him as a passenger in the truck. Immediately behind the Moreau truck-trailer combination, and traveling in the same direction on that highway, was a Ford automobile owned and being driven by Paul R. Green. Green was insured at that time under a liability policy issued by Allstate Insurance Company. Immediately behind the Green car, and also traveling east on the same highway, was an automobile owned and being driven by Joseph Chaisson, who was uninsured. The Green and Chaisson vehicles collided with the rear of the Moreau truck and trailer. As a result of that accident Moreau was killed almost instantly, and Hebert sustained serious injuries.
At the time the accident occurred, there were in effect two automobile liability insurance policies issued by State Farm to the decedent, Moreau, one of which covered the Dodge truck involved in the accident, and the other covered another vehicle owned by Moreau. Each of these policies provided uninsured motorist coverage.
There also were in effect at the time of the accident two other automobile liability insurance policies issued by State Farm to Robert J. Hebert, the passenger in the Moreau truck and the plaintiff in the companion suit. One of those policies covered an automobile owned by Hebert and the other covered a truck owned by him, neither of which vehicles were involved in the above mentioned accident. Each of those policies also provided uninsured motorist coverage.
Mrs. Moreau, the surviving widow of the decedent, instituted the instant suit originally against Chaisson, Green and the *909 latter's insurer, Allstate. While the suit was pending, she entered into a compromise agreement with Green and Allstate, settling her claim against them, and she thereupon voluntarily dismissed this suit as to those two defendants. Mrs. Moreau then amended her petition naming State Farm as an additional defendant, and demanding judgment against Chaisson and State Farm, jointly and in solido, for the damages she sustained. She alleged in that amended pleading that the accident resulted solely from the negligence of the uninsured motorist, Chaisson, and that State Farm is liable to her under the uninsured motorist coverage provided in the two policies which had been issued to her deceased husband.
The companion suit instituted by Hebert named Chaisson, Green, Allstate and State Farm as defendants. While that suit was pending, Hebert also settled his claim against Green and Allstate by compromise agreement, and he voluntarily dismissed the suit as to those two defendants. Hebert then filed an amended petition alleging that the accident resulted solely from the negligence of Chaisson, and that State Farm is liable, jointly and solidarily with Chaisson, to Hebert under the uninsured motorist coverage provided in the two policies which State Farm had issued to Hebert.
In each of the consolidated cases State Farm filed a motion for summary judgment, praying that the suit be dismissed as to it on the ground that no coverage was provided by any of the policies issued by that insurer. State Farm alleges in each such motion that the plaintiff, without the written consent of State Farm, entered into a settlement with persons or organizations who may be legally liable for the damages claimed by plaintiff, and that each policy issued by State Farm contains a clause which excludes uninsured motorist coverage when a settlement is entered into without the written consent of the insurer. It contends that in view of the settlement made by the plaintiff in each suit, without the written consent of State Farm, coverage under the uninsured motorist clause is excluded, and State Farm is relieved of liability.
Part IV of the above mentioned automobile insurance policies issued by State Farm, that being the part of each policy which extends uninsured motorist coverage, contains the following exclusionary clause:
"This policy does not apply under Part IV: ... (b) to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage (uninsured motorist coverage) shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;"
The evidence presented at the trial of the motion for summary judgment shows that while these suits were pending the plaintiff in each case entered into a compromise agreement with Green and Allstate, settling his or her claim against those defendants, and that the written consent of State Farm for such a settlement was never obtained. There is no dispute as to these facts.
The trial judge held that the above quoted exclusionary clause was valid, and that in each case it had the effect of excluding coverage under the uninsured motorist provision of the policies and of relieving State Farm from liability. A summary judgment thus was rendered in each case dismissing the suit as to State Farm.
The issue presented here was presented and considered by us in LaBove v. American Employers Insurance Company, 189 So.2d 315 (La.App. 3 Cir. 1966). We determined in that case that an exclusionary clause identical to the one involved in the instant suit was valid, that it was clear and unambiguous and that it operated to relieve the insurer from liability when the insured entered into a settlement of his *910 claim without the written consent of the insurer. The Court of Appeal, First Circuit, arrived at the same conclusion in Sylvest v. Employers Liability Assurance Corporation, 252 So.2d 693 (La.App. 1 Cir. 1971).
Plaintiff refers us, however, to the cases of Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Graham v. American Casualty Company of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972); Smith v. Trinity Universal Insurance Company, 270 So.2d 637 (La.App. 2 Cir. 1972); and Elledge v. Warren, 263 So.2d 912 (La.App. 3 Cir. 1972). She argues that these cases have established a rule that no provision of an automobile liability policy providing uninsured motorist coverage will be enforced if that provision has the effect of reducing the minimum coverage which each policy is required to provide by the uninsured motorist statute (LSA-R.S. 22:1406, subd. D), unless there is a "clear statutory and logical basis therefor." She contends that the "no settlement without consent" clause involved in this case, if enforced, would operate to reduce the minimum coverage required by the above statute, that there is no "rational basis" and no "good reason" for any such exclusion, and that it thus is invalid.
In the Graham and Deane cases, supra, the Louisiana Supreme Court held that the "pro rata" clause and the "excess" provision in the "other insurance" clause, in the uninsured motorist provisions of an automobile policy, were invalid insofar as those provisions tended to reduce the minimum coverage required by LSA-R.S. 22:1406, Subd. D. In the Smith case, supra, the Court of Appeal, Second Circuit, held that the "reduction" clause in the uninsured motorist provision of such a policy was unenforceable, since it also operated to reduce the minimum coverage required by the above mentioned statute.
We agree with the conclusions reached in the cited cases that in automobile policies providing uninsured motorist coverage the "pro rata" clause, the "excess" provisions in the "other insurance" clause, and the "reduction" clause usually included in those policies may have the effect of reducing the minimum coverage required by LSA-R.S. 22:1406, subd. D and that those clauses or provisions should be held to be invalid when the enforcement of them would have the effect of reducing the minimum coverage required by the above mentioned statute. We believe, however, that the exclusionary clause at issue here is not designed to avoid or to reduce the minimum coverage required by statute, that there is a logical and rational basis for such a clause in these policies, and that the exclusion does not conflict with the letter or the purpose of the uninsured motorist statute.
LSA-R.S. 22:1406, subd. D requires uninsured motorist coverage unless the insured rejects it. The statute, however, does not set out the language which must be used in each policy, and it does not prohibit exclusionary clauses or other provisions which are reasonable and which do not conflict with the letter or purpose of the law. The policies involved in this suit contain several provisions, definitions and exclusions which in some instances may serve to defeat recovery under the uninsured motorist provision, but which we believe are reasonable and are valid. Each such policy, for instance, defines the terms "insured," "insured automobile" and "uninsured automobile." It lists a number of exclusions under the last mentioned definition, and the other definitions have the effect of excluding some people and some motor vehicles from coverage. Each policy requires the timely reporting of the loss, the submitting of proofs of claim, cooperation with the insurer and the timely payment of premiums. None of those provisions are mentioned in the statute. We think the statute permits the insurer to incorporate provisions of that kind in its policies, so long as those provisions are reasonable and are not in derogation of the provisions and purpose of the uninsured motorist statute.
*911 In LaBove v. American Employers Insurance Company, supra, we set out several reasons why we considered an exclusionary clause identical to the one at issue here to be reasonable and justified. We think the reasons which we assigned in that case furnish at least a partial answer to the arguments which plaintiff makes in this suit. Plaintiff indicates in her arguments, however, that the only conceivable justification for this exclusion would be to protect the subrogation rights of the insurer under LSA-R.S. 22:1406, subd. D(4), and she argues that the exclusionary clause is not necessary for that purpose.
LSA-R.S. 22:1406, subd. D(4) provides:
"(4) In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, inclluding the proceeds recoverable from the assets of the insolvent insurer."
Plaintiff contends that the "subrogation rights" given to the insurer under the quoted part of the Revised Statutes were not impaired by the settlement which she entered into with Green and Allstate, because the liability of State Farm remained the same whether or not such a settlement was effected. She argues that State Farm would be entitled to subrogation only if Green and Chaisson are found to be joint tort feasors, and that if such a finding should be made State Farm's liability would be reduced to one-half the damages which otherwise might be due, because of plaintiff's settlement with Green. She cites Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3 Cir. 1964), as authority for that contention. Plaintiff's argument is that State Farm's liability to her remained the same despite her settlement with Green and Allstate, and that the exclusionary clause thus serves no useful purpose, except to deprive plaintiff unnecessarily of the minimum coverage provided in the uninsured motorist statute.
We do not reach the legal question of whether State Farm could be held to be liable in solido with Green and Allstate, because we have concluded that in either event State Farm had a pecuniary interest in the settlement which plaintiff made with Green and his insurer, and that there thus is a reasonable and logical basis for the provision in the policy requiring the written consent of State Farm for such a settlement. One reason for arriving at that conclusion is that plaintiff cannot recover more than the actual damages she sustained as a result of the accident, and if her settlement with Green and Allstate should fully compensate her for all of those damages, then she could have no further claim against State Farm. See Deane v. McGee, supra. Even if she were not fully compensated by the settlement, she could recover from Chaisson or State Farm no more than her remaining actual damages, and State Farm thus has a pecuniary interest in determining the amount of the settlement and the amount of her remaining damages.
Another reason is that Green and Allstate, if liable at all, are responsible for all damages sustained by plaintiff, whereas State Farm's contractual liability is only for damages due for "bodily injury" sustained by the insured. State Farm thus has an interest in determining how the payment made in the settlement is applied to the indebtedness.
We find no merit to plaintiff's argument that the right of indemnity to which State Farm may be entitled under LSA-R.S. 22:1406, subd. D(4) is limited to the proceeds of any settlement which may be made with, or any judgment which may be rendered against, the uninsured motorist, Chaisson. We think the term "any person or organization legally responsible *912 for the bodily injury for which the payment is made," means any other tort feasor, whether or not he is an uninsured motorist.
Plaintiff also argues that the term "any person or organization legally responsible for the bodily injury," as used in the above quoted part of the statute, does not apply to Green or to his insurer, because the latter has not been judicially determined to be legally responsible for the damages sustained by plaintiff. Plaintiff suggests that there must be a judicial determination of legal liability "before the so called right of subrogation arose," that no such determination has been made in this case, and that Green and his insurer thus cannot be said to be legally responsible for the damages. It is unnecessary for us to rule on that question, because we find that in any event State Farm has a pecuniary interest in the settlement. Even under plaintiff's theory, it might become necessary for State Farm to seek a judicial determination of Green's liability, after the proceeds have been disbursed, in order to exercise its rights under LSA-R.S. 22:1406, subd. D(4). Since State Farm could acquire a right to all or a part of the proceeds of the settlement, whether a judicial determination of liability is or is not required, the provision in the policy that it must consent to such a settlement is reasonable.
Plaintiff argues, finally, that the exclusionary clause being considered here provides the insurer with "a whip" to be used over the insured, and it thus gives the insurer a means of avoiding liability under the uninsured motorist coverage. She argues that it would have been useless for her to have asked for State Farm's consent, because the latter would have required a release from plaintiff before it would consent. Defendant counters with the argument that the absence of this exclusionary clause would permit "collusive settlements" between the plaintiff and other tort feasors to the prejudice of the insurer. None of these circumstances envisioned by the parties exist here, and we find no basis in the record to justify the assumption made by plaintiff. We concede that a circumstance such as that feared by plaintiff could occur. The fear or possibility that an insurer will arbitrarily withhold its consent to a settlement, however, is not sufficient to invalidate the exclusionary clause. It is unnecessary for us to express our views as to how the rights of the insured would be protected if such a circumstance should occur.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
DOMENGEAUX, J., concurs in decree and assigns reasons.
FRUGÉ, J., respectfully dissents and assigns written reasons.
DOMENGEAUX, Judge (concurring).
I concur in the decree. I feel that LaBove v. American Employers Ins. Co., 189 So.2d 315 (La.App. 3rd Cir. 1966), is controlling, and adequately disposes of the essential arguments presented by the plaintiff.
Plaintiff's claims are based substantially on the premise that the Supreme Court by its holding and rationale in the Deane and Graham cases (and the subsequent Courts of Appeal decisions following them) in effect overruled LaBove and the cited cases reaching a similiar conclusion. With this I do not agree. The rationale of Graham, Deane, etc. is that each policy must effectively provide not less than the minimum coverage required by the Uninsured Motorist Statute and any effort to reduce or deny this mandatory coverage will not be given effect. I am of the opinion that the exclusion herein is not an attempt to avoid, narrow, or reduce the mandatory minimum coverage of the policies.
I respectfully concur.
*913 FRUGÉ, Judge (dissenting).
I respectfully dissent from the result reached by the majority for the following reasons.
I disagree as a matter of law on the legal status to be afforded the exclusion clause relied upon by defendant to preclude uninsured motorist coverage in respect to plaintiffs. The exclusionary clause negates coverage arbitrarily, and thereby contravenes the statutory purpose of this legislation. The clause prevents recovery by plaintiffs of any uninsured motorist's award whatsoever, in spite of the fact that the party formerly released (Green, by compromise with plaintiffs) may have been free of any negligence. This exclusion places State Farm in the extremely advantageous position of being relieved of all liability under their contract on the basis of a clause which requires no showing by State Farm of any harm suffered by reason of plaintiff's compromise with Green and Allstate. This is seemingly unjust and in derogation of the statute's intent, when considered that State Farm has received premiums to insure plaintiffs against bodily injury resulting from accidents with uninsured motorists.
The worst fate which can befall State Farm is to ultimately be required to pay the limits of its coverage which it had become contractually obligated to pay plaintiffs (in the event of an accident with a negligent uninsured motorist). There is, however, the possibility that, at trial of this matter, the uninsured motorist, Chaisson, would be found free of negligence and, accordingly, State Farm would be relieved of all liability arising out of the uninsured motorist coverage issued.
It is not in the best legal interest of the public to require that legal representatives of parties to these actions first receive consent from their client's own uninsured motorist carrier before settling actions with other parties who may or may not be found ultimately liable for plaintiff's injuries. A well recognized principle of our law is that compromises are to be favored. If a client's interests are to be most favorably promoted through the device of settlement and compromise, the attorney involved cannot afford to operate at the whim, or subject to the direction and consent, of an insurance company's claims representative. This is especially so where the consent (required by the exclusion clause at issue) can be withheld in regard to plaintiff's claims against other parties whose possible liability could only be determined by trial and a consequential adjudication. A just weighing of the factors involved requires that the best interests of the public be protected by assuring that the plaintiffs-insureds be given a fair opportunity to recover by means of litigation, if necessary, the fruits of the coverage for which they have readily paid premiums.
The cases of LaBove v. American Employers Insurance Company, 189 So.2d 315 (La.App. 3rd Cir. 1966) and Sylvest v. Employers Liability Assurance Corporation, 252 So.2d 693 (La.App. 1st Cir. 1971), unquestionably have maintained the validity of the exclusionary clause in question, but are believed to be insufficient under the present state of our law. In LaBove, supra, this Court recognized that one of the purposes of the exclusionary clause was to uphold the insurance company's right to reduction of its liability in accordance with the receipt by the plaintiff-insured of sums from other liable sources. It is pointed out that the recent case of Smith v. Trinity Universal Insurance Company, 270 So.2d 637 (La.App. 2nd Cir. 1972), invalidated a reduction clause as being in contravention of the statute herein in question.
In regard to any "pecuniary interest" possessed by State Farm, the following comments are made. It is reasonable that the interest of State Farm, in knowing the amount of the former settlement, is certainly a valid consideration, but this is so only because of State Farm's possible contractual and not delictual liability under the circumstances. State Farm is definitely not the insurer of the uninsured motorist, *914 but insures the plaintiff from injury due to an uninsured motorist's negligence. See Gautreaux v. Pierre, 254 So.2d 476 (La.App. 3rd Cir. 1971).
The "collateral source" rule is not applicable under the present facts. Whereas, had there been an adjudication of sole liability on the part of Chaisson, Chaisson, as sole tortfeasor, could not have claimed credit for any gratis payment made through settlement by Green. However, State Farm, not being the insurer of Chaisson (in the event Chaisson is found liable), should not be denied the right to offset its liability by amounts received by plaintiff from extraneous sources, in the event that plaintiff's damages are adequately compensated from these other sources. The acquisition of funds by plaintiffs, in excess of their actual damages, should not be countenanced.
Judge Hood's opinion states on page 911, "Even if she were not fully compensated by the settlement, she could recover from Chaisson or State Farm no more than her remaining actual damages,...." This statement is respectully submitted to be incorrect, as the "collateral source" rule would apply to Chaisson, and Chaisson could not benefit by gratis payments made by a third person not ultimately found liable to plaintiff. On page 912 Judge Hood states that, "Since State Farm could acquire a right to all or a part of the proceeds of the settlement, whether a judicial determination of liability is or is not required, the provision in the policy that it must consent to such a settlement is reasonable." This is likewise believed to be incorrect. State Farm can not acquire any rights against the proceeds of the settlement without first having made payment to its insured and having a legal determination of someone's liability in accordance with LSA-R.S. 22:1406(D)(4). Perhaps this is what is meant, but, if so, it is not free from ambiguity.
Although not specifically considered by my learned brothers, I wish to present my impression in regard to the applicability of the "Harvey doctrine" to the facts of this case. Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3rd Cir. 1964). By reason of the very nature of uninsured motorist coverage, it is believed that the "Harvey doctrine" would have no application to the instant situation. Harvey, supra, applies between joint tortfeasors and their respective liabilities, and would not seem to be pertinent to the liability of an uninsured motorist carrier whose liability is contractual and not delictual. It should be remembered that the "Harvey doctrine" applies to parties actually adjudicated to be joint tortfeasors, a circumstance not availing itself herein.
To deny plaintiffs the opportunity, at the least, of demonstrating at trial, the negligence of Chaisson and the concurrent liability of State Farm, would be to abrogate the intent of the statute in question and to fail to comply with our more recent pronouncements.
For these reasons, I respectfully dissent.