PRICE, Judge.
In this action an automobile insurer is seeking to recover payments made to its assured for having entered into a compromise agreement with a third party. This appeal results from the trial court's sustaining of an exception of no cause of action and an exception of prematurity as to part of plaintiff's demands.
Southern Farm Bureau Casualty Insurance Company has alleged in its pleadings initiating this suit against its assured, W. Huey Lenard, that as a result of an accident on May 22, 1970, involving the pickup truck driven by Lenard and an uninsured automobile, Lenard sustained very serious injuries; that in accord with the uninsured motorist provisions of Lenard’s policy, he was paid the sum of $5,000 by plaintiff for his personal injuries; that it also paid to Lenard the sum of $5,000 under the medical payments provision of the policy and $2,104.72 for repairs to the truck under the collision coverage; that Lenard thereafter filed suit in the United States District Court against General Motors Corporation, alleging the injuries sustained by him in the collision resulted from its negligence in the manufacture of the pickup truck; that plaintiff intervened in the suit, asserting claims for the amounts previously paid plaintiff under the policy to which it was subrogated both legally and conventionally; that Lenard thereafter consummated settlement of all claims against General Motors for an amount in excess of the total of plaintiff’s subrogated claims and by joint motion the action of Lenard was voluntarily dismissed.
Recovery is sought from Lenard on the theory the provisions of the insurance contract and receipt for payments to the insured afford plaintiff this right. Alternatively, plaintiff contends it is entitled to recover these amounts because of Lenard’s active breach of his contractual obligations to plaintiff, which have prejudiced its right to recover from General Motors.
The settlement involved herein shows defendant received the total sum of $96,000 from General Motors in settlement of any and all claims he might have against it resulting from the collision. The agreement contains the following provisions on which plaintiff primarily relies as being in contravention of defendant’s contractual obligations assumed under the insurance policy issued to him and the conditions agreed to in connection with receipt of payments under the policy:
“1. * * * I will either (a) amicably settle said intervention and effect a complete dismissal of same with prejudice without trial or (b) will proceed to trial and pay any final judgment in full on the claim of said Intervenor * * *.
“II. * * * I do further agree and promise to guarantee and hold harmless General Motors Corporation * * * of and and from any and all liability which they have or may have to said Intervenor arising out of or connected with their payments to me arising out of the accident of May 22, 1970
“III. * * * to guarantee, indemnify and hold harmless from any cost of defense including attorney’s fees of their New Orleans and Monroe, Louisiana counsel, including court costs and including expert witness fees, providing, however, that with respect to my said agreement of guarantee, indemnification and hold harmless, the extent of my undertaking for attorneys’ *419 fees for said New Orleans and Monroe, Louisiana, counsel, shall not exceed $2,500.00 and the extent of my undertaking for expert witness fees * ■* * shall not exceed $1,000.00. * * *
“IV. * * * I will forthwith set aside and hold in escrow with my attorney, William D. Brown, of Monroe, Louisiana, the total sum of $17,500.00 which said sums shall be held in escrow by him as such security and for use in settling said claims of said Intervenor, or payment of judgment secured by said Intervenor and for paying court costs, expert witness fees and attorney’s fees of Monroe and New Orleans counsel for General Motors Corporation as set forth thereinabove, * * * ”
Plaintiff contends the foregoing agreements made with General Motors by defendant are in violation of the basic conditions on which the insurance policy was issued which applies to all of the coverages extended to plaintiff under the various endorsements to the policy. The policy language relied on is as follows:
“4. Insured’s duties in the event of occurrence, claim or suit.
* * * (c). The insured shall cooperate with the company, and, upon the company’s request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury or property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payments, assume any obligation or incur any expense other than for first aid to others at the time of the accident.
“7. Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured’s rights of recovery therefore against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.”
Plaintiff further contends defendant’s actions are directly in conflict with the provisions of the release and subrogation agreement executed on his behalf in connection with payment to him of $5,000 under the medical payment endorsement to the policy, which in part reads as follows:
“The undersigned covenants that no settlement has been made by the undersigned with any person, firm or corporation against whom a claim may lie, and no release has been given to anyone responsible for such loss, and that no such settlement will be made, or release given without written consent of the company; and the undersigned covenants and agrees to cooperate fully with said company, to present claim, and, if necessary, to commence, enter into and prosecute suit against such person, firm or corporation through whose negligence the aforesaid loss occurred, or who may otherwise be responsible therefor, with all due diligence, in his, her, or their own name. * * * ”
Plaintiff advances a similar contention in regard to the release and subrogation agreement executed for payment of collision damages to defendant’s truck, relying *420 on the following language of the policy-endorsement and subrogation agreement:
“1. Named insured’s duties in the event of loss. In the event of loss, the named insured shall:
(d) corporate with the company, upon the company’s request, shall assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the named Insured because of loss with respect to which this insurance applies; and shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses; but the named insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, offer or pay any reward for recovery of stolen property or incur any expense other than as specifically provided in this insurance.”
* * * * * *
“And I assign to Southern Farm Bureau Casualty Insurance Company right of action against any & all for the damage herein mentioned.”
Defendant filed an exception of no cause of action setting forth that he had settled his claim for bodily injuries with General Motors, which in no way jeopardizes nor prejudices the plaintiff’s right to continue to pursue its claim for damages against this third party. An additional exception of no cause of action, combined with an exception of prematurity, was filed by defendant based on allegations that no substantive nor procedural rights of plaintiff arising out of its subrogation claims derived from payment to defendant have been denied or adversely affected, nor has General Motors asserted any defense to plaintiff’s action against it arising out of defendant’s execution of the settlement and compromise agreement. Defendant contends that until such time that plaintiff has shown that its rights have been adversely affected, no cause of action lies against him and plaintiff’s action is premature. After the original hearing on these exceptions the trial court sustained the exceptions of no cause of action and prematurity to all of defendant’s demands and allowed plaintiff to amend its petition. After certain amendments were made by plaintiff the same exceptions were again urged and argued. The court found plaintiff’s petition had stated a cause of action and was not premature insofar as its demands for reimbursement for the sum of $5,000 paid under the uninsured motorist provisions of the policy was concerned. The court sustained the exception of no cause of action and of prematurity as to the coverage of the amounts paid plaintiff under the medical payments endorsement and the collision portion of the policy and dismissed plaintiff’s demands as to these claims.
Lenard did not appeal nor answer plaintiff’s appeal. Therefore, the overruling of the exceptions as to the uninsured motorist benefits paid under the policy is not involved on this appeal, and any further discussion of this issue in this opinion is solely for the purpose of showing how plaintiff’s rights under this provision relate to or may be distinguished from the remaining issues for review.
The trial judge in reasons for judgment sustaining the exceptions as to the claims for recovery of payments made under “medical payment” and “collision damages” portions of the policy found a distinction between the rights of the insurer to recover from the insured amounts paid under the uninsured motorist provisions and benefits paid under the other coverage of the policy.
The distinction is discussed by the trial judge as follows:
“Clearly set forth in the policy, as a condition of the contract, is the follow *421 ing provision relating to uninsured motorists coverage:
“ ‘In the event of payment to any person under this insurance: (a) the company shall he entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the body injury because of which such payment is made; (emphasis supplied).”
“The court has found no authorities discussing this provision in the present context, nor has either counsel cited any. The language seems clearly and simply to grant the insurer a right of reimbursement from any funds collected by the insured from a third person; and such a provision is consistent with the basic philosophy of the uninsured motorist coverage. The purpose of such coverage is to provide some payment by the policy which the insured would by law be entitled to recover from a third person. Unless there is a third person responsible, there is no payment due insured under the policy. Hence, it appears that the right to reimbursement from sums collected by the insured exists wholly apart from legal or even conventional subrogation and is not conditioned upon successful litigation. In short, this is simply a contractual provision which establishes the ‘law between the parties’ and which is operative without regard to extraneous legal concepts. Accordingly, whatever may prove to be the facts upon trial which may affect the ultimate outcome, plaintiff has pleaded a cause of action with respect to the $5,000.00 previously paid under the uninsured motorist coverage. (1).” (footnote omitted)
“Unlike the payments just discussed, those made to the exceptor under the collision and medical payments coverages of the policy are not contingent upon the liability of a third person. Plaintiff owed these payments, whether or not another person was responsible for the losses ; and the conditions of the policy relating to these coverages grant plaintiff no rights in addition to or greater than sub-rogation. Even though the conditions of the policy and the provisions of the payment receipts or releases either 'speak of ‘assignment’ or establish obligations which exceptor has allegedly violated, their purpose is clearly to protect the rights, if any, of plaintiff to recover from the third person. Our jurisprudence establishes the rule that until and unless it be shown that the insurer has actually lost such rights, it is not prejudiced by any such breach on the part of its insured and may not pursue the insured. The amended petition adds nothing of substance or legal principle to avoid the applicability of this rule. (2).” (footnote omitted)
The thrust of plaintiff’s argument on this appeal is that its cause of action sought to be enforced is a single cause for breach of contract entitling it to reimbursement of all payments made to defendant and not merely an action arising from the laws regarding subrogation as found by the trial court insofar as the “medical payments” and “collision damage” coverages are concerned.
In support of its position plaintiff relies on the decisions in LaBove v. American Employers Insurance Company, 189 So.2d 315 (La.App.3rd Cir. 1966); Sylvest v. The Employers Liability Assurance Corp., 252 So.2d 693 (La.App. 1st Cir. 1971); and Moreau v. State Farm Mutual Automobile Insurance Co., 298 So.2d 907 (La.App.3rd Cir. 1974). These cases have upheld the “exclusionary clause” in the “uninsured motorist” endorsement to insurance policies which relieves the insurer of liability to the *422 insured if he makes a settlement without the consent of the company with any person who may be liable. Plaintiff urges that although these cases dealt with uninsured motorist coverage only, that the underlying principles on which the court decided the issues are applicable to the question presented here.
Defendant contends the trial court was correct in finding the LaBove, Sylvest and Moreau cases to be inapplicable, and in finding the cases of St. Paul Fire & Marine Insurance Co. v. Gallien, 111 So.2d 571 (La.App.1st Cir. 1959), and Dupre v. Vidrine, 261 So.2d 288 (La.App.3rd Cir. 1972, writs refused), more analogous to the circumstances involved herein.
In Gallien an insured gave a third party a release on the standard form provided by the Department of Public Safety, Financial Responsibility Division. He had previously received payment from his insurer of collision damages and had executed a subrogation agreement for the amount received. The insurer sued both its insured and the third party for the amount of collision damage paid. In joining its insured as a defendant in the suit the insurer contended the policy involved prohibited the insured from releasing from liability anyone responsible in damages for destruction of the insured vehicle and the granting of the discharge by the insured was an active breach of the prior subrogation contract which gave the insurer the right to recover from the insured the amount previously paid him. The Court of Appeal, in reversing the trial court, held it was unnecessary to determine whether an active breach of contractual provisions had occurred by the execution of the compromise, as the insurer had not been prejudiced in that the release had not been urged by the third party as a defense in the insurer’s action against him. The decision was cited with approval in Dupre under a factual situation involving a release of a third party tort feasor and his liability insurer by an insured who had received medical payments and granted subrogation rights to his insurer.
Gallien and Dupre may be interpreted to require the insurer to allege and show it has suffered an impairment of sub-rogation rights to maintain an action to recover from the insured for violation of a policy provision prohibiting him from settling his own claims against a third party without the insurer’s consent.
We do not find the circumstances in LaBove, Sylvest and Moreau to be analogous to those presented in this case which are in essence purely subrogation rights acquired by the insurer.from payment of sums owed under the policy which are not at all contingent on or affected by the tort liability of a third party. We therefore find the application of the Gallien and Dupre decisions was appropriate.
We further find, as did the trial judge, that no facts have been alleged by plaintiff which show its rights of subrogation have been prejudiced at this time.
In the settlement agreement between defendant and General Motors, all claims of plaintiff against General Motors were expressly reserved. Defendant could not have settled those claims which had previously vested in plaintiff by virtue of its subro-gation rights.
Therefore, plaintiff has the same right to pursue the judicial enforcement of these claims against General Motors after the compromise of defendant’s personal claim as it had prior thereto.
We concede some of the provisions of the settlement agreement with General Motors are unusual. Particularly the indemnities assumed by defendant in the - agreement. These at first glance might appear to place defendant in an adverse position with his insurer’s interest. This, however, would appear to be more probable in con *423 nection with an attempt to recover uninsured motorist payments which are not before us on this appeal. As found by the trial judge it is speculative to assume at this point that defendant will not comply with his obligations to assist and cooperate with his insurer on trial of the claims advanced by plaintiff in its action against General Motors. Until such time that plaintiff has shown its claims against the third party have been prevented or impaired by a defense interposed which is related to defendant’s execution of the compromise agreement, it has no cause against defendant.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s costs.