316 So.2d 744 (1975)
Dr. James W. LORIO
v.
SAFECO INSURANCE COMPANY OF AMERICA et al.
No. 10133.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied August 26, 1975.
On Rehearing June 30, 1975.
Writ Refused September 17, 1975.
Ralph W. Brewer, Baton Rouge, for appellant.
James E. Moore, Baton Rouge, for defendant-appellee.
Donald Zuber and James H. Morgan, III, Baton Rouge, for Michael Norwood.
Before SARTAIN, ELLIS and de la HOUSSAYE, JJ.
de la HOUSSAYE, Judge.
This is an appeal from a decision of the Lower Court granting a summary judgment in favor of defendants, Safeco Insurance Company of America and Michael Y. Norwood.
Suit was instituted by plaintiff-appellant, Dr. James W. Lorio, on February 22, 1974, in the 19th Judicial District Court against appellees, Michael Y. Norwood and Safeco Insurance Company for personal injuries resulting from an automobile accident which occurred on March 3, 1973, in East Baton Rouge Parish, Louisiana. It was alleged by appellant in his original petition that Michael Y. Norwood, while operating his automobile, struck the rear end of an automobile owned and driven by appellant, Dr. James W. Lorio, resulting in injuries to Dr. Lorio.
It was further alleged that Norwood carried minimum liability insurance coverage *745 in the amount of Five Thousand and No/100 ($5,000.00) Dollars, per person, per accident and Ten Thousand and No/100 ($10,000.00) Dollars per accident. Upon making a demand for payment to the claims agent of St. Paul Fire and Marine Insurance Company, which was the liability insurer of Norwood, Dr. Lorio, through his attorney, received the sum of Five Thousand and No/100 ($5,000.00) Dollars, this amount being the single limit per person, per accident provided for by Norwood's insurer. The record indicates that Dr. Lorio did not obtain any written consent of Safeco, his insurer, before accepting payment from Norwood's liability carrier.
Appellant's basic contention is that his own insurer is liable to him for additional payments based upon an uninsured motorist's coverage clause contained in his own policy which was in effect at the time of the accident. The amount of uninsured motorist's coverage provided to Dr. Lorio was Five Thousand and No/100 ($5,000.00) Dollars, per person, per accident and Ten Thousand and No/100 ($10,000.00) Dollars per accident. This coverage was for two vehicles declared under the policy, one of which was the vehicle involved in the accident.
In response to this demand, both Norwood and Safeco filed motions for summary judgments resulting in a favorable judgment by the Lower Court, dismissing the suit of the Appellant against both defendant appellees.
Norwood argues that when his insurer paid Dr. Lorio the policy limits there was a complete release from any liability on his part. The facts found in the transcript tend to bear this statement out. Following the accident of March 3, 1973, the claims agent of St. Paul Fire and Marine Insurance Company investigated the accident and on September 21, 1973, directed correspondence and a settlement draft to Dr. Lorio's counsel tendering its policy limits of Five Thousand and No/100 ($5,000.00) Dollars "for all claims, past, present, future, that may arise out of this accident".
In addition to the tender letter, the settlement draft itself, immediately above the required endorsement, contained further language in part reciting: "The payee(s) endorsement below accept(s) and agree(s) that this draft constitutes the settlement in full of the claim or account described on the face hereof . . .". The face of the draft described that payment was being made on behalf of Michael Norwood. There is nothing in the record to indicate that Dr. Lorio or his counsel reserved any rights upon accepting the settlement offer of Five Thousand and No/100 ($5,000.00) Dollars. The tender was accepted and the money was received when the draft was negotiated.
Norwood's counsel cites the case of Braudaway v. United Equitable Insurance Company, 208 So.2d 359 (La.App. 4th Cir. 1968) as authority to maintain a plea of estoppel based on the doctrine of accord and satisfaction. This case outlines the prerequisites leading to an accord and satisfaction, all of which are present herein. The requirements are as follows: (1) an unliquidated or a disputed claim; (2) a tender made by the debtor in full settlement of the claim; and (3) an acceptance of the tender by the creditor; when the first two requirements are present, the creditor cannot accept the tender and, at the same time, avoid the fact that such acceptance constitutes full settlement of his claim. Braudaway supra, at p. 360.
It is patently evident that all of the above requirements have been met here. There was definitely a genuine dispute involved as well as a tender of payment on behalf of Norwood. When plaintiff-appellant accepted payment by cashing the settlement check, he estopped himself from claiming any further amounts which may have arisen from this claim.
Safeco Insurance Company of America, plaintiff-appellant's uninsured *746 motorist carrier, argues that because there was a complete settlement, there can be no coverage under its policy issued to Dr. Lorio based upon an exclusionary clause stating that the policy does not apply "TO BODILY INJURY TO AN INSURED WITH RESPECT TO WHICH SUCH INSURED, HIS LEGAL REPRESENTATIVE OR ANY PERSON ENTITLED TO PAYMENT UNDER THIS COVERAGE SHALL, WITHOUT WRITTEN CONSENT OF SAFECO, MAKE ANY SETTLEMENT WITH ANY PERSON OR ORGANIZATION WHO MAY BE LEGALLY LIABLE THEREFOR."
Our reading of the transcript substantiates Safeco's allegation. As a result of this lack of consent, we feel that the exclusionary provision of Safeco's policy must apply. See Moreau v. State Farm Mutual Automobile Insurance Co., 298 So.2d 907 (La.App. 3rd Cir. 1974); Sylvest v. Employers Liability Assurance Corp., 252 So. 2d 693 (La.App. 1st Cir. 1971).
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are to be assessed to plaintiff-appellant.
Affirmed.
Before SARTAIN, ELLIS and BARNETTE, JJ.

ON REHEARING
SARTAIN, Judge.
We granted a rehearing in this cause to reconsider our original holding which affirmed the trial court's decision granting motions for summary judgments in favor of each defendant, Safeco Insurance Company of America (Safeco) and Michael Y. Norwood (Norwood).
We now conclude that it was error to uphold the motion as to Norwood. Further, the motion as to Safeco should have been granted but not for the reason stated in our original opinion. We shall discuss these matters in the order mentioned.
The motion for summary judgment on behalf of Norwood must of necessity stand or fall on the alleged compromise between plaintiff and St. Paul Fire & Marine Insurance Company (St. Paul). Plaintiff argues that a serious dispute of fact surrounds the offer to and acceptance of the purported compromise and that it was error to dispute of this issue on a motion for summary judgment.
St. Paul's draft of September 21, 1973 was in response to a letter from plaintiff's attorney, which in pertinent part stated:
"Because of the fact that Mr. Norwood was insured only for $5,000.00, I find it necessary to use this means to make formal demand upon both the insured and his insurer for settlement of this claim in hopes of avoiding litigation. I will recommend to my client settling his claim for personal injury against both the insured and the insurer within thirty days and no longer upon payment by the insurer of the policy limits of $5,000.00 and upon payment by Mr. Norwood of an additional $3,500.00."
St. Paul's letter of September 21, 1973 (with the check enclosed) stated:
"On behalf of St. Paul, and our assured, I wish to acknowledge your correspondence of September 13, 1972. Likewise, copy of letter from Mr. Atkinson, who represents the assured in this matter.
St. Paul, herewith tenders its policy limits of $5,000.00, for all claims, past, present and future that may arise of this accident."
Plaintiff contends that the above mentioned letters should be considered along with the draft and when such is done it negates an intention to release Norwood. We are of the opinion that the letters attached to plaintiff's opposition to the Norwood motion are a vital part of the circumstances *747 surrounding the issuance of the check by St. Paul and its acceptance by plaintiff and raises a genuine issue as to a material fact, i.e., the intention of the parties. Plaintiff is entitled to put this issue to the trier of fact. C.C.P. Art. 966, Corceller v. Bonanza International, Inc., 289 So.2d 822 (4 La.App., 1974).
We now turn to Safeco's motion for summary judgment. It was premised on two grounds: (1) that its assured, plaintiff, had settled with Norwood contrary to the exclusionary clause in the policy (which is quoted in our original opinion) which clause was recognized by us in Sylvest v. Employers Liability Assurance Corporation, 252 So.2d 693 (1971) and Moreau v. State Farm Mutual Automobile Insurance Co., 298 So.2d 907 (3 La.App., 1974); and (2) that the "underinsured" provision of L.R.S. 22:1406 does not apply in the instant case because Safeco's policy was issued prior to January 1, 1973.
We chose to base our original decision on the exclusionary clause mentioned in (1) above and the Moreau and Sylvest cases. These cases were reversed and the Supreme Court of Louisiana held that the exclusionary clause was applicable only in situations where a settlement by an insured, under his uninsured motorist coverage, prejudiced the rights of the insurer. Hebert v. Green, La., 311 So.2d 223 (1975) and Moreau v. State Farm Mutual Automobile Insurance Co. et al., La., 311 So.2d 223 (1975).
We do not have to address ourselves to this issue because we find that the second ground upon which Safeco seeks to obtain a motion for summary judgment has merit.
Safeco issued its policy to plaintiff on November 15, 1972 which policy included two vehicles, a 1972 Chevrolet driven by plaintiff at the time of the accident and a 1970 Lincoln. The policy reflects that $5,000 uninsured motorist protection was obtained for each vehicle.
Plaintiff contends that inasmuch as Norwood had only $5,000 general liability coverage with St. Paul, he is entitled to proceed against his own insurer (Safeco) under the uninsured motorist provisions of his policy. L.R.S. 22:1406D(2)(b).
Safeco argues that plaintiff is attempting to invoke the "underinsured" provisions of L.R.S. 22:1406D which were added to the section by Act No. 137 of 1972; whereas, the act itself specifically provides that it was not to become effective until January 1, 1973. The policy in the instant litigation was issued on November 15, 1972 for a period ending on May 15, 1973. Act No. 137 of 1972 (now L.R.S. 22:1406D(1)(2)) provides:
D. (1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.
(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the *748 limits of the automobile liability insurance carried by such insured.
(2)(a) For the purpose of this coverage, the terms "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.
(b) For the purposes of this coverage the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by an insured. (Emphasis ours)
Prior to Act No. 137 of 1972 uninsured motorist protection was mandated under Act 187 of 1962. Pursuant to this latter act L.R.S. 22:1406D read:
D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.
(2) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.
(3) An insurer's insolvency protection shall be applicable only to accidents occuring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within one year after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.
(4) In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
A comparison of the two acts convinces us that Act 137 of 1972 clearly enlarged the "uninsured" motorist protection available to an insured under L.R.S. 22:1406D (Act No. 187 of 1962) by including those persons who are also "underinsured". Section 1406D(2) was also amended by adding Section 1406D(2)(b), above.
Prior to the 1972 act, if the offending tort feasor had any liability insurance the victim of the tort was unable to collect any benefits from the latter's uninsured motorist insurer. The uninsured status of the offending motorist was a condition precedent to an insured's recovery against his insurer. It was essential that the uninsured *749 status of the offending motorist be alleged and proved by the party seeking to recover against his own insurer. Talazac v. Phoenix of Hartford Insurance Co., 259 So.2d 636 (4 La.App., 1972) and the cases therein cited.
The Act of 1972 which provided that it was not to become effective until January 1, 1973, cannot be construed so as to change the terms and conditions of plaintiff's policy which was issued on November 15, 1972.
Accordingly, for the above reasons, our original decision herein is vacated and the judgment of the district court sustaining the motion for summary judgment on behalf of Safeco Insurance Company of America is affirmed. The judgment of the district court sustaining the motion for summary judgment as to Michael Y. Norwood is reversed and this matter is remanded for a trial on the merits consistent with the views herein expressed.
The cost of this appeal is to be borne by Michael Y. Norwood. All other costs are to await a determination on the merits.
Affirmed in part, reversed in part, and remanded.